

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-15-00094-CR

KRISTOPHER DONALD MIXON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 251st District Court
Randall County, Texas
Trial Court No. 23,963-C, Honorable Ana Estevez, Presiding

November 10, 2015

## OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Kristopher Donald Mixon, appeals the trial court's judgment by which he was convicted of possession of a controlled substance, methamphetamine, in an amount greater than four grams but less than 200 grams.[1] The trial court sentenced him to eight years' imprisonment. On appeal, he brings four points of error, three of which focus on the trial court's supplemental charge to the jury and the fourth of which challenges the sufficiency of the evidence. We will affirm.

---

[1] See TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (West 2010).

Factual and Procedural History

On November 4, 2012, Amarillo Police Department officers responded to an early morning 911 hang-up call from 7002 Imperial Trail in Amarillo, Texas. Officer Jarrod Robertson responded first to the scene of the hang-up call. He was met by a female named Belinda Treadway, appellant's girlfriend, who began to voice her suspicions to Robertson about an intruder being in the shed. Two other people in addition to Treadway and appellant were present that morning; the two people—appellant's daughter and her husband—had apparently just moved into the residence as well. Corporal Jerry Neufeld arrived a short time later to assist Robertson.

Both appellant and Treadway consented to a search of the home, including the shed. The search began with the shed in the backyard, described by Robertson as a detached garage that appeared to be used more as a workshop. As Robertson, Neufeld, and Treadway made their way to the shed, appellant retrieved the key and went outside to unlock the door to the shed.

After confirming that no one was located in the shed, the officers, appellant, and Treadway returned to the residence where Treadway retrieved and brought to Robertson an opened white box containing needles, spoons, a clear plastic bag containing a crystalline substance that looked like methamphetamine, and other items that Robertson recognized as drug paraphernalia. To rule out an alternative purpose for having the hypodermic needles in the home, Robertson asked whether appellant was a diabetic to which appellant responded, "No." When Robertson asked appellant what the contents of the bag were, appellant responded, "Probably meth."

A full-scale search of the residence then ensued, beginning in the northeast bedroom where the officers found several items of drug paraphernalia, specifically both broken and intact pipes. A search of the southeast bedroom yielded several more items of drug paraphernalia, including more pipes generally used for smoking methamphetamine. Robertson and Neufeld returned to the shed to continue their search, this time for narcotics. Officers found additional paraphernalia in the shed and also located a small green change purse on a shelf. Inside that purse, the officers discovered a plastic bag containing what they believed—and later confirmed—to be methamphetamine, the 6.85 grams possession of which is at issue in this case.

Appellant was convicted of possession of the 6.85 grams of methamphetamine and sentenced to eight years' imprisonment. On appeal from that conviction, he presents three points of error contending that the trial court reversibly erred by giving the jury a supplemental charge when the jury indicated that it was having difficulty reaching a decision. He also challenges the sufficiency of the evidence to support his conviction.

Sufficiency of the Evidence

Appellant challenges the sufficiency of the evidence in the final point of error; however, because this point of error would, if sustained, afford the greatest relief to appellant, we will address the sufficiency of the evidence first. *See Chaney v. State*, 314 S.W.3d 561, 565, 566 n.6 (Tex. App.—Amarillo 2010, pet. ref'd) (citing TEX. R. APP. P. 43.3 and *Bradleys' Elec. Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999) (per curiam)).

<u>Standard of Review</u>

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Id.* When reviewing all of the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *See id.* at 906–07 n.26 (discussing Judge Cochran's dissenting opinion in *Watson v. State*, 204 S.W.3d 404, 448–50 (Tex. Crim. App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899.

<u>Applicable Law</u>

A conviction for possession of a controlled substance is supported only when the evidence establishes that the defendant "knowingly or intentionally possesse[d]" the alleged controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a). "A

person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." TEX. PENAL CODE ANN. § 6.03(b) (West 2011). The mere presence of the accused at the place where contraband is located does not make him a party to joint possession, even if he knows of the contraband's existence. *Jenkins v. State*, 76 S.W.3d 709, 712 (Tex. App.—Corpus Christi 2002, pet. ref'd). Proof of possession requires evidence that the accused exercised "actual care, custody, control, or management" over the substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West Supp. 2014). Thus, the State must prove the accused (1) "exercised control, management, or care over the substance" and (2) knew that the substance "possessed" was contraband. *See Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988) (en banc).

When the accused is not in exclusive control of the place where the contraband is found, the State must establish care, custody, control, or management by linking the accused to the substance through additional facts and circumstances. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981)). Be it direct or circumstantial, the State's evidence of links must establish, "to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *See id.* at 405–06 (quoting *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995) (en banc)); *Park v. State*, 8 S.W.3d 351, 352–53 (Tex. App.—Amarillo 1999, no pet.). In other words, the evidence must affirmatively connect the accused to the contraband in such a manner and to such a degree that a reasonable inference may arise that the accused knew of

5

the contraband's existence and that he exercised control over it. *See Travis v. State*, 638 S.W.2d 502, 503 (Tex. Crim. App. [Panel Op.] 1982).

The several factors by which an accused may, under the unique circumstances of each case, be sufficiently "linked" to the contraband, include the following considerations: (1) the defendant's presence when a search is conducted; (2) whether the contraband is in plain view; (3) the defendant's proximity to and the accessibility of the contraband; (4) whether the defendant was under the influence of contraband when arrested; (5) whether the defendant possessed other contraband or narcotics connecting himself to the contraband; (6) whether the defendant made incriminating statements connecting himself to the contraband; (7) whether the defendant made furtive gestures; (8) whether there was an odor of contraband; (9) whether other contraband or drug paraphernalia were present; (10) whether the defendant owned or had the right to possess the place where the contraband was found; (11) whether the place where the contraband was found was enclosed; (12) whether the defendant was found with a large amount of cash; (13) whether the conduct of the defendant indicated a consciousness of guilt, including whether the accused attempted to flee; and (14) whether occupants of the premises gave conflicting statements about relevant matters. *See Evans*, 202 S.W.3d at 162 n.12; *Jenkins*, 76 S.W.3d at 712–13; *see also Triplett v. State*, 292 S.W.3d 205, 209 (Tex. App.—Amarillo 2009, pet. ref'd) (listing numerous factors to be considered in analysis). These factors, however, are simply that—factors which may circumstantially establish the sufficiency of evidence offered to prove a knowing "possession." *See Evans*, 202 S.W.3d at 162 n.12 (cautioning courts that

6

these factors "are not a litmus test"). It is not the number of links that is dispositive; rather, it is the logical force of all the evidence. *See id.* at 162.

Analysis

In evaluating the evidence for factors linking appellant to the methamphetamine found in the shed, we note that the methamphetamine at issue was found in a purse in a locked outdoor shed, the key to which appellant apparently controlled. Scales and several other items of paraphernalia were present throughout the house and the shed, though appellant maintains none of those items were directly linked to him. Specifically, several pipes were found in the southeast bedroom that had been converted by appellant into a video surveillance equipment room, used to monitor activities on and around the property.

Appellant was considered the "primary resident" of the house although appellant's sister held title to the house. From the interaction with police at the scene, we see that appellant was familiar with and admitting using methamphetamine at various points in the past. In fact, when Treadway brought the opened box of drug paraphernalia and a plastic bag with an unidentified substance in it, appellant readily concluded that the bag probably contained methamphetamine.

Through these additional facts and circumstances, the State presented evidence from which the jury could have rationally found that appellant (1) "exercised control, management, or care over the substance" and (2) knew that the substance "possessed" was contraband. *See id.* at 161.

7

Appellant highlights a number of other "factors" which did not link him to the methamphetamine found in the shed. He points out that there is no evidence that appellant was under the influence of methamphetamine when he was arrested, that appellant made no incriminating statements when arrested, that appellant made no attempt to flee and no furtive gestures, that officers found no large amounts of cash, and that there were no other indications in appellant's behavior of a consciousness of guilt. However, the "absence of various affirmative links does not constitute evidence of innocence to be weighed against the affirmative links present." *Jones v. State*, 466 S.W.3d 252, 260 (Tex. App.—Houston [1st Dist.] 2015, pet. filed) (quoting *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd)).

Appellant also emphasizes that it was Treadway who had actual knowledge of the first amount of methamphetamine as evidenced by the fact that she retrieved it and brought it to Robertson. Nonetheless, that Treadway may have also known enough about or been sufficiently linked to methamphetamine is not at issue in this case. "The mere fact that a person other than the accused might have joint possession of the premises does not require the State to prove that the defendant had *sole* possession of the contraband, only that there are affirmative links between the defendant and the drugs such that he, too, knew of the drugs and constructively possessed them." *Poindexter*, 153 S.W.3d at 412; *see Cole v. State*, 194 S.W.3d 538, 548 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) ("The State need not prove exclusive possession of the contraband for conviction.").

Having found the evidence was sufficient, such that the jury could have rationally concluded that appellant knowingly or intentionally possessed the methamphetamine

found in the shed, and remaining unpersuaded by the evidence he cites as militating against guilt, we overrule his point of error.

Supplemental Charge to the Jury

In his first three points of error, appellant takes issue with the trial court's supplemental charge to the jury. First, he contends that the trial court erred by issuing said charge to the jury. Secondly, he contends that such error caused harm to appellant. Finally, he contends the trial court's supplemental jury charge deprived him of a fair and impartial trial as guaranteed by the Sixth Amendment to the United States Constitution and by Article V, Section 10 of the Texas Constitution.[2]

Applicable Law and Standard of Review

When the jury sent out a note that it "[could] not reach decision on this case," the trial court proposed a supplemental charge reminding the jury that, if it is unable to reach a verdict, a mistrial will result, the case will still be pending, and there is no guarantee that a second jury would find the issue any easier to resolve. Appellant lodged a very general objection to this supplemental charge and proposed an alternative charge in the form of a question to the jury regarding the possibility of reaching a verdict. The trial court overruled appellant's objection and read the

---

[2] When in response to the jury's note, the trial court proposed the supplemental charge, appellant objected as follows: "Judge, I just need to object to it. I will object. I would propose that they just be asked if they have any possibility of reaching a verdict." The State responds, and we agree, that appellant's very general objection to the supplemental charge when it was proposed failed to preserve any challenge to the constitutional concerns he now raises on appeal. Only by reading the objection most liberally would the objection preserve any error on appeal. At any rate, there having been no mention whatsoever of any constitutional challenge to the supplemental charge, we conclude that appellant failed to preserve any constitutional issues concerning the supplemental charge and summarily overrule that point of error. *See* TEX. R. APP. P. 33.1(a).

9

supplemental charge to the jury. Having received its supplemental charge, the jury retired from the courtroom at 2:09 p.m. At 3:26, the trial court noted that the jury indicated that it had reached a verdict.

A supplemental charge, such as the one given in this case, to a jury that had declared itself deadlocked is widely known as an *Allen* charge. *See Barnett v. State*, 189 S.W.3d 272, 277 n.13 (Tex. Crim. App. 2006); *see also Ex parte Menchaca*, 854 S.W.2d 128, 130 & n.3 (Tex. Crim. App. 1993) (en banc) (noting one alternative name for *Allen* charge is a "dynamite" charge). An *Allen* charge takes its name from *Allen v. United States*, 164 U.S. 492, 501, 17 S. Ct. 154, 41 L. Ed. 528 (1896), and refers to a supplemental charge sometimes given to a jury that declares itself deadlocked. Generally speaking, it is designed to remind the jury that if it is unable to reach a verdict, a mistrial will result, the case will still be pending, and there is no guarantee that a second jury would find the issue any easier to resolve. *See id.*; *Barnett*, 189 S.W.3d at 277 n.13. The use of an *Allen* charge in this context has long been sanctioned by both the United States Supreme Court and the Texas Court of Criminal Appeals. *See Allen*, 164 U.S. at 501–02; *Howard v. State*, 941 S.W.2d 102, 123 (Tex. Crim. App. 1996) (en banc), *overruled on other grounds by Easley v. State*, 424 S.W.3d 535, 538 & n.23 (Tex. Crim. App. 2014); *Arrevalo v. State*, 489 S.W.2d 569, 571–72 (Tex. Crim. App 1973).

Nevertheless, trial courts are cautioned that they must design and administer this supplemental charge in a non-coercive manner. *See Howard*, 941 S.W.2d at 123–24. Generally speaking, "a supplemental charge which suggests that *all* jurors reevaluate their opinions in the face of disparate viewpoints cannot be said to be coercive on its

face." *Id.* at 123. The primary inquiry to determine the propriety of an *Allen* charge is its coercive effect on juror deliberation, "in its context and under all circumstances." *Lowenfield v. Phelps*, 484 U.S. 231, 237, 108 S. Ct. 546, 98 L. Ed. 2d 568 (1988) (quoting *Jenkins v. United States*, 380 U.S. 445, 446, 85 S. Ct. 1059, 13 L. Ed. 2d 957 (1965) (per curiam)).

Analysis

When, after approximately three and one-half hours of deliberation, the jury indicated to the trial court that it was unable to reach a decision, the trial court issued the following supplemental instruction over appellant's general objection:

> You are instructed that in a case of this nature it is not unusual for your deliberations to take a considerable amount of time.
>
> You are further instructed that in a large portion of the cases absolute certainty cannot be expected. Although the verdict must be based upon proof beyond a reasonable doubt, and although the verdict must be the individual verdict of each juror, and not a mere acquiescence in the conclusion of other jurors, each juror should show a proper regard to the opinion of the other jurors. You should listen, with a disposition to be convinced, to the arguments of the other jurors. You should consider whether or not you are basing your opinion on speculation or surmise and not on the evidence in this case.
>
> If this jury finds itself unable to arrive at a unanimous verdict, it will be necessary for the Court to declare a mistrial and discharge the jury. The indictment will still be pending, and it is reasonable to assume that the case will be tried again before another jury at some future time. Any such future jury will be impaneled in the same way this jury has been impaneled and will likely hear the same evidence which has been presented to this jury. The questions to be determined by that jury will be the same questions confronting you, and there is no reason to expect that the next jury will find these questions any easier to decide than you have found them.
>
> With this additional instruction, you are requested to continue your deliberations in an effort to arrive at a verdict that is acceptable to all

11

members of the jury, if you can do so without doing violence to the conscience of any individual juror.

The trial court then requested that the jury retire and continue its deliberations. It did so and returned its guilty verdict one hour and seventeen minutes later.

As is apparent from the face of the *Allen* charge given, the trial court did not direct the supplemental charge toward the minority jurors. *See Howard*, 941 S.W.2d at 123–24. The instructions contained in the *Allen* charge utilized here are consistent with similar instructions used in *Allen* charges used throughout this state and have been held to be noncoercive. *See West v. State*, 121 S.W.3d 95, 108–09 (Tex. App.—Fort Worth 2003, pet. ref'd) (concluding that nearly identical *Allen* charge was not coercive and providing citation to several state and federal cases dealing with similarly worded *Allen* charges). That said, the *Allen* charge was not coercive on its face, nor was it delivered with any additional comment that could be read to be coercive or in any way convey the trial court's view of the case. *See Howard*, 941 S.W.2d at 123–24 (observing, in that case, that supplemental charge directing "*all* jurors" to reevaluate their opinions was not coercive on its face and noting further that the trial court "did not shade the instruction with coercive nuance").

Instead, the charge given here appears to be designed to "avert an impasse" following three and one-half hours of deliberation. *See id.* at 124. Indeed, the jury continued to deliberate for an additional one hour and seventeen minutes after having been so charged, suggesting that the jury did continue deliberations rather than come to a decision following a simple acquiescence by the minority jurors. We conclude that the trial court did not err in giving the *Allen* charge to the jury in these circumstances.

12

We overrule appellant's first point of error contending that the *Allen* charge from the trial court was error. Having so concluded, we need not address whether the alleged error was harmful and overrule appellant's second point of error as well.

Conclusion

Having overruled appellant's points of error, we affirm the trial court's judgment of conviction. *See* TEX. R. APP. P. 43.2(a).

Mackey K. Hancock
Justice

Publish.