

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| LANCE ADRIAN COFFEY, | § | No. 08-17-00107-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | |
| | § | Court Criminal Court No. 1 |
| THE STATE OF TEXAS, | § | |
| | § | of El Paso County, Texas |
| Appellee. | § | |
| | § | (TC# 20150C07007) |

## MEMORANDUM OPINION

Lance Adrian Coffey (Appellant) appeals his conviction for driving while intoxicated. His two issues concern the admission of evidence regarding the rate by which one eliminates alcohol from his body and the sufficiency of the evidence establishing guilt. We affirm.

### *Background*

The circumstances initiating the prosecution included Appellant 1) being involved in a mid-day traffic accident wherein he rear-ended another vehicle stopped at an intersection, 2) having shoved the vehicle with which he collided across the intersection, 3) having submitted to field sobriety testing after the police arrived at the scene, and 4) having had a breath alcohol concentration (BAC) of .073 about an hour and a half after the accident. Furthermore, the police officer administering the field tests did so after smelling alcohol on Appellant's breath, hearing

Appellant's slightly slurred speech, noticing his "unsteady balance," and seeing his "red, bloodshot" eyes.

Regarding the field sobriety tests, the record illustrates that Appellant failed the nystagmus components by exhibiting four of six "clues." The officer administering them opined that those results indicated an impaired ability or a blood alcohol content approaching .10. Regarding his performance on other of the field tests, the record illustrates that he could not maintain his balance and exhibited five of eight clues indicative of impaired ability when undertaking the walk and turn test. So too did he fail the one-leg stand by exhibiting three of four clues allegedly denoting impaired ability. Furthermore, Appellant's performance led the officer to conclude that Appellant "was impaired to drive."

Upon being arrested, Appellant acceded to two breathalyzer tests. They were administered about 1.5 hours after the accident and revealed a BAC of "0.073 grams of alcohol per 210 liters of breath."

The foregoing was heard by the jury, which ultimately found Appellant guilty. His having perfected an appeal from that conviction leads us to now addressing his two issues.

*Issue Two – Sufficiency of the Evidence*

We address the sufficiency issue first because, if sustained, it affords Appellant the greatest relief. *See Cox v. State*, No. 02-16-00400-CR, 2017 WL 4172604, at *3 (Tex. App.—Fort Worth Sept. 21, 2017, no pet.) (mem. op., not designated for publication) (stating that it addresses the sufficiency issue first since, if sustained, it affords appellant the greater relief); *Mixon v. State*, 481 S.W.3d 318, 322 (Tex. App.—Amarillo 2015, pet. ref'd) (stating the same). Through it, Appellant argues that the State failed to prove, beyond reasonable doubt, that he was intoxicated while driving his vehicle. We disagree and overrule the issue.

The pertinent standard of review is that recently described in *Carranza v. State*, No. 08-16-00298-CR, 2019 WL 2205665, at *3 (Tex. App.—El Paso May 22, 2019, no pet.) (not designated for publication) and *Hernandez-Palomares v. State*, No. 08-15-00312-CR, 2017 WL 4277308, at *5 (Tex. App.—El Paso Sept. 27, 2017, no pet.) (not designated for publication). We refer the litigants to those cases for its explanation. So too do we note that in conducting the review, all evidence is considered irrespective of its admissibility. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Hernandez-Palomares*, 2017 WL 4277308, at *5.

Obtaining a conviction for DWI obligates the State to prove that the defendant operated a motor vehicle in a public place while intoxicated. TEX. PENAL CODE ANN. § 49.04(a). "Intoxicated" means "not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body[]" or "having an alcohol concentration of 0.08 or more." *Id*., at § 49.01(2). Finally, both modes of proving intoxication may be submitted in the jury charge, as was done here. *Kirsch v. State*, 306 S.W.3d 738, 743 (Tex. Crim. App. 2010). That Appellant operated a vehicle in a public place is not at issue. Rather, Appellant merely attacks the element of intoxication and whether the State proved he was drunk.

As previously mentioned, the record contains evidence that Appellant 1) exhibited slurred speech, 2) had blood-shot eyes, 3) had alcohol on his breath, 4) was unsteady, 5) failed various field sobriety tests, and 6) struck a car stopped at an intersection with sufficient force to send it across the street. Other evidence indicates that he had a BAC of .073 about 1.5 hours after the accident occurred. Aside from the fact that .073 is a mere .007 below the presumptive statutory intoxication level of .08, the number gains in importance when considered with a particular comment by the State's expert.

3

The expert testified that "on average," "[a]fter a person's last drink, research has taught us that a person can peak between half an hour to an hour after their last drink." She further defined the term "peak" as "the highest breath alcohol concentration that a person can achieve during a drinking session." No evidence appears of record suggesting that Appellant continued to ingest alcohol after engaging in the accident. So, it is quite reasonable to infer that the last time he consumed such an intoxicant was no later than the time of the accident. Given 1) that a person's peak BAC is .5 to 1.0 hours after the last drink, and 2) the breath tests were taken 1.5 hours after the latest time he could have had his last drink, the factfinder had evidentiary basis to reasonably deduce that Appellant was in the elimination phase of his inebriated state when he underwent BAC testing. That is, a factfinder had reasonable basis to deduce that Appellant's BAC had already peaked and was declining when he submitted to the breath tests. Despite being on the decline, his breath alcohol concentration was still .073.

Considered together, the foregoing evidence of record was more than ample to support a rational factfinder's inference that Appellant was intoxicated when the collision occurred. *See De Los Santos v. State*, No. 08-14-00099-CR, 2018 WL 851265, at *4 (Tex. App.—El Paso Feb. 14, 2018, no pet.) (not designated for publication) (finding the evidence of intoxication sufficient to support conviction where appellant had red-glassy eyes, alcohol on his breath, swayed while standing, and failed each field sobriety test administered to him). He may not have been at the presumptive statutory level of .08, but his appearance, his smell of alcohol, his performance on the field sobriety tests, the force with which he struck another car at an intersection and his having a breath alcohol concentration of .073 was enough to show he lacked the normal use of his mental or physical faculties by reason of the introduction of alcohol. *See Kirsch*, 306 S.W.3d at 745

(stating that BAC test results are often highly probative to prove both per se and impairment intoxication).

*Issue One—Admission of Evidence*

Next, Appellant contends that the trial court erred in admitting expert testimony regarding the rate at which persons eliminate alcohol from their body. He believed this improper because it was "essentially a means to circumvent the requirements of *Mata v. State*, 46 S.W.3d 902 (Tex. Crim. App. 2001)." We overrule the issue.

The initial debate we address is whether Appellant preserved his complaint. The State argues that he did not. Appellant argues that he did. We side with Appellant.

Preserving an issue for review involves a complainant making a timely and specific objection and having the court rule on that objection. *Everitt v. State*, 407 S.W.3d 259, 262-63 (Tex. Crim. App. 2013). An objection is specific enough when it makes the trial court aware of the complaint. *See id.*, at 263 (stating that an objection must be specific enough to make the trial court aware of the complaint). That is, all a party has to do is to let the trial judge know what he wants and why he thinks he is entitled to it clearly enough for the judge to understand him. *Id.* And, in assessing whether this test was met, we avoid applying it in a hyper technical manner. *Id.*; *Delgado v. State*, No. 08-15-00041-CR, 2018 WL 2424052, at *5 (Tex. App.—El Paso May 30, 2018, no pet.) (not designated for publication) (stating that the objection does not have to be hyper technical to avoid forfeiting a complaint). It is enough if the legal basis of the argument is obvious to the court and opposing counsel. *Delgado*, 2018 WL 2424052, at *5 (stating that "a general or imprecise objection will not preserve error unless the legal basis for the objection is obvious to the court and opposing counsel").

Here, Appellant asked to voir dire the State's expert. While examining her, he asked about retrograde extrapolation, *Mata v. State*, and the indicia mentioned in *Mata* when attempting to show the breath alcohol concentration of an accused via retrograde extrapolation. *See Mata v. State*, 46 S.W.3d 902, 908-909 (Tex. Crim. App. 2001) (addressing the science of retrograde extrapolation and defining it as the computation back in time of blood-alcohol level or the estimation of one's blood alcohol level at the time of driving based on a test result from some later time). Once that examination ended, he said:

> Your Honor, at this time I'd like to do a motion in limine for Ms. Mendoza to testify to any type of numbers as far as basically what she's estimating he was at the time he was driving. Using the elimination rate, the point of it is to compute some type of number back in time. And regardless of what the State is calling it, that they're using an elimination rate. They're still trying to make a retrograde analysis and call it something else.
>
> Under *Mata*, the definition they use is a retrograde extrapolation, is the computation of back in time of the blood-alcohol level that is estimation of the level at the time of the driving based on the test result from sometime later.
>
> It doesn't say it's only retrograde if you're trying to use all these other factors. It says, basically, what's not allowed is to make assumptions about this person as far as what their elimination rate is. That's one of them. Because they can vary from person to person. There are different times of the day and she doesn't know any of that. Bringing that to the jury is going to confuse them. It's prejudicial and we don't think it's appropriate for Ms. Mendoza to be able to testify to that.

In response, the State argued that:

> What I recall about *Mata*, Your Honor, it deals with many factors, not just elimination rate that we're discussing today. Just like Ms. Mendoza testified to, she would need to know the actual alcohol, how many shots or how many beers -- whatever it may be -- how many he had, when he last had them, his weight. She needs to know a lot of different things. We're not going there.
>
> What we are doing is we're talking about the elimination rate, which is based on scientific principle . . . recognized in the scientific community and she has the training and experience to talk about those things.

That led the trial court to ask if "the elimination is just for the average Joe?" and "nothing specific to this defendant?" When the prosecutor answered "correct" and "[w]e're giving a rate," the court informed Appellant "[y]our objection will be denied."

As can be seen, Appellant opened his comment by mentioning the technical term "motion in limine." The State correctly argues that a motion in limine generally fails to preserve error. *See Rodriguez v. State*, No. 08-17-00177-CR, 2019 WL 2710246, at *15 (Tex. App.—El Paso June 28, 2019, no pet. h.) (not designated for publication). However, the general purpose of a motion in limine is to prevent an opposing party from asking prejudicial questions and introducing prejudicial matters in front of the jury without first asking the court's permission. *Id*. Appellant was attempting to do more than that. He examined the expert on voir dire about her ability to calculate Appellant's BAC through retrograde extrapolation, the application of *Mata,* and the presence of indicia requisite to obtaining an accurate BAC through retrograde extrapolation. This context reveals that he actually objected to the expert testifying about retrograde extrapolation and its components like the elimination rate. *See Resendez v. State,* 306 S.W.3d 308, 313 (Tex. Crim. App. 2009) (stating that the context of the argument, not simply the specific complaint, must be considered in deciding whether an issue was preserved for review). More importantly, the trial court apparently interpreted his argument similarly, as exemplified when uttering that the "***objection*** will be denied." [Emphasis added]. To say under these circumstances that use of the words "motion in limine" alone somehow trumped this context and required more from Appellant would be to impose the very hyper technicality we were told to eschew.

We next turn to the State's suggestion that Appellant's objection at trial did not comport with the complaint raised on appeal and, therefore, was waived. *See Jurado v. State*, No. 08-17-00010-CR, 2019 WL 1922757, at *7 (Tex. App.—El Paso Apr. 30, 2019, no pet.) (not designated

7

for publication) (stating that the complaint on appeal must comport with the objection made at trial). Doing so requires us to return to the context of his argument. Appellant did seek to prevent the expert from assigning a level of breath alcohol concentration to him at the time of the accident through either retrograde extrapolation or elimination rate. But again, hyper technicality aside, we see him also attempting to bar the State from using either theory as a means of generally computing his breath alcohol concentration. While the State may not have intended for the expert to make the calculation, it obviously wanted the jury to do it. To suggest otherwise would be rather specious given its invitation to the jury to do so during closing argument.[1] In short, Appellant's objection was not the model of clarity. Yet, its tenor here and below reveals effort to address the propriety of calculating his breath alcohol concentration at the time of the accident through retrograde extrapolation. So, it can be said that the objection at trial comports with his complaint on appeal.

Having found the issue sufficiently preserved, we now address the substance of Appellant's complaint. In doing so, we acknowledge and adhere to the applicable standard of review. As observed in *Carranza v. State,* No. 08-16-00298-CR, 2019 WL 2205665, *10 (Tex. App.—El Paso May 22, 2019, no pet.) (not designated for publication), a trial court's decision to admit or exclude evidence is reviewed under the standard of abused discretion. *Id.* at *10. That means the decision must be left standing if it falls within the zone of reasonable disagreement. *Id.*

---

[1] The invitation of which we speak appears in the following argument:

> Let's look at BAC in this case. BAC, we know at 14:04 -- which is 2:04, look at the breath slip -- was .073. And the second sample was .073. Ms. Mendoza testified that based upon scientific studies, that the average elimination rate of a person is .01 to .025. ***You can use that in your calculations as well. If you use that in your calculations***, he's clearly over the .08 at the time he's driving the motor vehicle. [Emphasis added].

Again, Appellant sought to exclude testimony about retrograde extrapolation due to the absence of evidence allegedly pivotal to its reliable calculation. Without that evidence, it was inadmissible. We agree, as should have the trial court.

Through *Mata v. State*, the Court of Criminal Appeals did not purport to generally exclude evidence of retrograde extrapolation; instead, it provided guidance as to when application of that theory in a particular case would be reliable and, therefore, permissible and admissible. *See Mata*, 46 S.W.3d at 916 (observing that the science of retrograde extrapolation can be reliable in a given case and listing various factors that should be considered by the trial court in assessing its reliability and, therefore, admissibility in a particular case); *accord*, *Kirsch*, 306 S.W.3d at 744 (stating that in *Mata*, "we held that expert extrapolation testimony is admissible only if certain factors are known, such as 'the length of the drinking spree, the time of the last drink, and the person's weight'"). The indicia itemized by the *Mata* court to consider in gauging reliability included such things as 1) the length of time between the offense and administration of the BAC test, 2) the number of tests administered and the length of time between each, 3) whether and to what extent any individual characteristics of the defendant were known to the expert, 4) the accused's weight and gender, 5) the accused's drinking pattern and tolerance for alcohol, 6) the quantity of alcohol consumed by the accused on the day or night in question, 7) the type of beverage consumed, 8) what he or she ate before, during and after consuming the beverages, and 9) the duration of the drinking spree and its culmination. *Mata*, 46 S.W.3d at 916. No evidence touching upon any of these indicia was developed by the State, here. It apparently opted to forego that because it was not going to ask the expert to compute Appellant's BAC around the time of the collision. Instead, it wanted the jury to make the calculation, as previously illustrated. To that end, evidence of the "average Joe's" elimination rate or the rate an "average Joe" eliminates alcohol from his body was

9

solicited from the expert, and the trial court decided to admit it because the evidence pertained to the "average Joe" as opposed to Appellant in particular. And, the "average" elimination rate, according to the witness, ranged from .01 to .025 grams of alcohol per hour.

No doubt, the elimination rate is a component of the retrograde extrapolation exercise. Without knowing at what rate alcohol dissipates from the human body given the aforementioned indicia, extrapolation could not occur. So, the State provided part of the equation needed to make the computation via proof of the "average Joe's" elimination rate. Yet, *Mata* and its progeny demanded more.

To extrapolate one's earlier BAC and thereby render the computation reliable requires the incorporation of other components into the equation. Those components were specified in *Mata* and its progeny such as *Kirsch*. In other words, a reliable BAC computed through retrograde extrapolation varies depending upon indicia particular to the accused. Data regarding such things as how much he drank, when and what he drank, what if anything he ate, and the like is incremental to assessing his past BAC. In effect, one must take the analysis from general to particular, general being the "average Joe" to particular being the accused. Because evidence of the indicia deemed requisite by *Mata* and its progeny was missing at bar, any resulting computation ending at the general, as opposed to the particular, would be incomplete and unreliable. So, admitting the "average Joe's" elimination rate alone fell outside the zone of reasonableness built by the Court of Criminal Appeals in *Mata*. The latter required more than a mere generalized elimination rate, and reasonable minds cannot differ on that.

In short, the trial court's decision to overrule Appellant's complaint authorized the jury to compute a BAC specific to a particular individual based only upon criteria applicable to the average, non-specific person. But, the State was not prosecuting the "average Joe" but rather

10

Appellant. *Mata* and its progeny prohibit an analysis based solely on the "average Joe." Again, that analysis must go from the general to the particular, and the trial court allowed the jury to remain at the starting point here. In doing so, it erred.

Nonetheless, we overrule Appellant's issue since the trial court's decision was harmless. No one contends the error was constitutional in nature; nor do we deem it as such. So, we must disregard it unless it affected Appellant's substantial rights. TEX. R. APP. P. 44.2(b) (stating that any error other than constitutional error "that does not affect substantial rights must be disregarded"); *accord, Flores v. State*, 299 S.W.3d 843, 859 (Tex. App.—El Paso 2009, pet. ref'd) (stating that non-constitutional error must be disregarded unless it affected the Appellant's substantial rights).[2] It did not here.

As previously mentioned, the State did invite the jury to utilize the elimination rate in calculating Appellant's BAC at the time of the accident. Assuming *arguendo* it accepted the invitation, it could have taken the rate and compared it to the breath test results (.073) and the 1.5-hour time period between the accident and the test to derive a BAC exceeding .08. If that were the only evidence of record and the only means of determining intoxication at bar, then it would be difficult to conclude that Appellant's substantial rights were unaffected by the trial court's decision. Yet, there was more.

The trial court instructed the jury on both definitions of intoxication. In other words, the jury was told that conviction was appropriate if the evidence established, beyond reasonable doubt, that Appellant had a BAC of .08 ***or*** if his mental and physical faculties were impaired due to the ingestion of alcohol. And as illustrated while earlier discussing Appellant's sufficiency issue, the

---

[2] Error affects substantial rights when it has a substantial and injurious effect or influence in determining the jury's verdict. *Flores v. State*, 299 S.W.3d 843, 859 (Tex. App.—El Paso 2009, pet. ref'd). Whether it did involves examining the whole record, including the trial court's instructions, the jury argument of counsel, and the evidence illustrating guilt. *Id.*

record contains ample evidence establishing that he had ingested alcohol before the accident. Not only did he smell of alcohol, but he also had a .073 BAC around 1.5 hours after the accident. Again, a BAC of .073 is a mere fraction away from the presumptive intoxication level of .08. And, as noted earlier, "BAC-test results, even absent expert retrograde extrapolation testimony, are often highly probative to prove both per se and impairment intoxication." *Kirsch*, 306 S.W.3d at 745.

There is also the evidence of Appellant's blood-shot eyes, slurred speech, striking a parked car in mid-day with great force, and performance on the field sobriety tests. While having hip problems (which he purportedly had) may have affected his performance on some of those field tests (*e.g.* those related to walking or standing) we found no evidence suggesting it somehow increased the horizontal nystagmus seen by the officer in Appellant's eyes.

Additionally, the State did more than ask the jury to find guilt based on the extrapolation of an earlier BAC. So too did it discuss the impairment exhibited by Appellant and his performance during the field sobriety tests. Combined, all the foregoing circumstances lead us to conclude that Appellant was not harmed by the decision to overrule his objection to the expert's retrograde extrapolation testimony.

Having overruled Appellant's issues, we affirm the judgment of the trial court.


August 21, 2019

BRIAN QUINN

Before McClure, C.J., Palafox, J., and Quinn, C.J.
Quinn, C.J., (Sitting by Assignment)

(Do Not Publish)