

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

Nos. 07-19-00372-CR
07-19-00373-CR

MARCUS REED, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 167th District Court
Travis County, Texas
Trial Court Nos. D-1-DC-19-904028 & D-1-DC-19-904029,
Honorable David Wahlberg, Presiding

January 12, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant Marcus Reed, proceeding pro se, appeals his convictions for official oppression and aggravated perjury. Through two issues, he attacks the "factual" sufficiency of the evidence underlying his convictions and propriety of the trial court supposedly coercing the jury into finding him guilty once it revealed it was deadlocked. We affirm.[1]

---

[1] Because this appeal was transferred from the Third Court of Appeals, we are obligated to apply its precedent when available in the event of a conflict between the precedents of that court and this Court. See TEX. R. APP. P. 41.3.

*Factual Sufficiency of the Evidence*

As previously mentioned, appellant was convicted of official oppression and aggravated perjury. He argued that his conviction for official oppression was "factually" insufficient because the text messages utilized by the State to assist in proving the guilt did not include 1) "any threats, either explicitly or implicitly, to the alleged victim's freedom, rights, privileges, power, or immunity" or 2) "any requests, either explicitly or implicitly, for the Appellant to not contact her." His conviction for aggravated perjury was "factually" insufficient, in his view, because 1) he apparently was not allowed to question witnesses during the grand jury proceeding and 2) the State simply asked him "Yes/No questions" at trial. We overrule the issue for several reasons.

First, Texas no longer recognizes a "factual sufficiency" review. *Getz v. State*, No. 07-19-00074-CR, 2020 Tex. App. LEXIS 3249, at *14 (Tex. App.—Amarillo Apr. 16, 2020, no pet.) (mem. op., not designated for publication); *Torres v. State*, No. 03-17-00058-CR, 2018 Tex. App. LEXIS 3157, at *10 n. 8 (Tex. App.—Austin May 4, 2018, no pet.) (mem. op., not designated for publication).[2] Second, appellant failed to cite to the record and applicable legal authority; consequently, his arguments were waived due to inadequate

---

[2] Despite appellant's failure to request that we do so, we nonetheless reviewed whether the evidence was legally sufficient to support the convictions under the standard announced in *Braughton v. State*, 569 S.W.3d 592 (Tex. Crim. App. 2018). Our review of the record leads us to conclude that it was. Concerning the charge of aggravated perjury, appellant, an arson investigator and peace officer, falsely represented to the grand jury that he had not contacted the victim after running her name through the "Versadex"; the evidence illustrated he had. TEX. PENAL CODE ANN. §§ 37.02(a), 37.03(a) (West 2016) (stating that one commits aggravated perjury if with intent to deceive and with knowledge of the statement's meaning he makes a false statement under oath or swears to the truth of a false statement previously made and the statement is required or authorized by law to be made under oath and the false statement is material and made during or in connection with an official proceeding). Concerning his guilt for official oppression, evidence illustrated that he told the victim she was in trouble, viz. pending criminal matters, needed his help, and would help if she helped him "relax" through engaging in sexual activities. In other words, the evidence was enough to permit a rational fact-finder to reasonably infer that appellant led her to believe her continued freedom could be affected by her willingness to engage in sexual acts with him. *Id.* § 39.03(a), (c) (West Supp. 2020) (stating that a public servant commits official oppression if acting under color of his office or employment intentionally subjects another to sexual harassment, which includes requests for sexual favors made as a condition of a person's exercise or enjoyment of any right, privilege, power, or immunity).

briefing. *See Marquez v. Cantu,* No. 03-17-00795-CV, 2018 Tex. App. LEXIS 5642, at *4 (Tex. App.—Austin July 25, 2018, no pet.) (mem. op., not designated for publication) (noting the duty to adequately brief an issue and concluding that the issue was waived since the appellant failed to support it with appropriate citations to authorities and the record).

Third, the right to confront witnesses does not encompass grand jury proceedings. *See Lopez v. State*, 158 Tex. Crim. 16, 21, 252 S.W.2d 701, 704 (1952) (stating that a "grand jury proceeding is not one in which the accused has the right to be confronted with the witnesses against him"); *see also United States v. Ciambrone*, 601 F.2d 616, 622–23 (2d Cir. 1979) (stating that a defendant has no constitutional right to personally appear before the grand jury or cross-examine witnesses before the grand jury).  So, his conviction for aggravated assault cannot be "factually insufficient" because he allegedly was denied the chance to ask questions of witnesses during the grand jury proceeding.

Fourth, we know of no authority requiring the State to ask witnesses questions requiring more than a "yes" or "no" answer, and, again, appellant cited us to none.  Should such questions with their accompanying answers provide the jury evidence illustrating guilt beyond reasonable doubt, they suffice.

*Coercive Charge to the Jury*

Appellant next contends that the trial court coerced the jury into convicting him after indicating to the court that it was deadlocked on some, but not all, of the accusations against him.  Though appellant recognized that the trial court did not submit an actual *Allen* charge, he compared his circumstances to those where such a charge was impermissibly used to coerce a conviction.  *See Mixon v. State*, 481 S.W.3d 318, 325–26 (Tex. App.—Amarillo 2015, pet. ref'd) (stating that an *Allen* charge takes its name from

3

*Allen v. United States*, 164 U.S. 492, 501, 17 S. Ct. 154, 41 L. Ed. 528 (1896), and refers to a supplemental instruction given a jury that declares itself deadlocked and attempts to induce it to continue deliberations and come to a verdict). We overrule the issue for several reasons.

First, this issue too was inadequately briefed due to the absence of citation to the record. Second, and most importantly, the record reveals that the jury was never deadlocked regarding appellant's guilt for aggravated perjury. Its notes to the trial court stated that it was deadlocked with regard to the accusations of sexual assault and official oppression.[3] In response, the trial court informed the jury of the substance of an *Allen* charge but then announced that it would not issue the charge to the jury. That is, the trial court told the jury what could happen when juries become deadlocked. And, this consisted of informing the body of possible mistrial on the charges upon which it was deadlocked, a retrial of those charges, and another jury hearing the same evidence and facing the same questions. The jurors were then asked to decide if they cared to continue deliberations before the court decided whether to formally submit an *Allen* charge, and, if so, it suggested they be amenable to compromise if that could be done without harming their "personal position." The jury opted to continue deliberating; so, an *Allen* charge was not formally submitted. Its ensuing deliberation resulted in finding appellant guilty of aggravated perjury and official oppression; it remained deadlocked as to the allegation of sexual assault.

That the body remained deadlocked as to sexual assault hardly supports the notion that the trial court's words were coercive. The same is true with regard to the fact that it

---

[3] At the time, the jurors were 11 in favor and 1 against guilt for official oppression. The spread was far greater concerning appellant's guilt for the crime of sexual assault.

remained deadlocked over two of the three counts of official oppression. Moreover, the trial court's words were no more coercive than those used in cases where the trial court actually submitted an *Allen* charge and the charge was found not to be coercive. *See, e.g.*, *Mixon*, 481 S.W.3d at 326 (wherein the trial court 1) informed the jury of the consequences of a deadlock, the potential for a retrial, the potential of another jury hearing the same evidence and having the same questions, the suggestion that jurors show respect for the opinion of other jurors, and the suggestion they listen to the arguments of other jurors, and 2) admonished the body to continue deliberating in effort to arrive at a verdict acceptable to all jurors if that could be done without violating one's conscience). Nothing said by the trial court here could reasonably be interpreted as evincing that the trial court sought a particular outcome. *See Ortiz v. State*, No. 05-16-00817-CR, 2018 Tex. App. LEXIS 464, at *22 (Tex. App.—Dallas Jan. 16, 2018 pet. ref'd) (mem. op., not designated for publication) (concluding that the *Allen* charge was not coercive because, among other things, it did not convey the court's opinion about the case). Nothing said could reasonably be viewed as effort by the trial court to direct its comments at any particular juror or group of jurors. *See Mixon*, 481 S.W.3d at 326 (stating that a supplemental charge suggesting that **all jurors** reevaluate their views in the face of disparate viewpoints is not coercive on its face). Given these circumstances, the trial court's words cannot be interpreted as coercive.

We affirm the judgments of conviction.


Per Curiam


Do not publish.