**Opinion filed August 29, 2025**



## In The

# Eleventh Court of Appeals

_____

## No. 11-24-00137-CR

_____

### LUIS REYES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court**
**Ector County, Texas**
**Trial Court Cause No. C-22-0789-CR**

## M E M O R A N D U M   O P I N I O N

A jury found Appellant, Luis Reyes, guilty of the second-degree felony offense of possession of a controlled substance in an amount greater than four grams but less than 200 grams. TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (West Supp. 2024). Appellant then pleaded "true" to the habitual offender enhancement allegations, the jury assessed his punishment at ninety-nine years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice, and the trial

court sentenced Appellant accordingly. In a single issue, Appellant argues that the evidence is insufficient to prove that he possessed a controlled substance. We affirm.

*Background*

On March 24, 2022, Odessa Police Officer Miguel Guerrero was called to a residence to assist medical personnel. When he arrived, Officer Guerrero observed medics attending to a man, identified as Appellant, who was on the ground and appeared to be unconscious. Officer Guerrero described that Appellant was "snoring" and gasping for air, symptoms consistent with an overdose. Appellant was lying approximately ten feet from a shed covered with a blue tarp. Officer Guerrero testified that he looked behind the blue tarp on the shed for other people who might have overdosed and needed medical attention.

When he pulled back the blue tarp, Officer Guerrero observed in plain view drug paraphernalia and a clear bag with a white powdery substance in it on a sofa next to the wall of the shed. Officer Guerrero believed the substance to be cocaine. Officer Guerrero also saw a cell phone next to the drugs and drug paraphernalia.

At the scene, Appellant was given two doses of Narcan, a medication administered to patients believed to be overdosing on opioids. The white powdery substance found inside of the shed was later determined to be fentanyl, a synthetic opioid, weighing 22.99 grams. By the time that he arrived at the hospital, Appellant's condition had improved. A nurse who treated Appellant at the hospital testified that his symptoms were consistent with that of a fentanyl overdose. She further testified that Appellant's urinalysis tested positive for amphetamine and methamphetamine. She explained that at that time, the urinalysis given by the hospital would not detect fentanyl, but the nurse further testified that Appellant had admitted to a police officer that he had taken fentanyl.

After he collected the drugs and drug paraphernalia, which included scales and used gloves, Officer Guerrero went to the hospital where Appellant had been taken. Officer Guerrero read Appellant his *Miranda*[1] rights, and Appellant agreed to speak to him. Appellant told Officer Guerrero that he did not know what he had taken to overdose, but he also denied taking any illegal drugs. When Officer Guerrero questioned Appellant about the shed, Appellant admitted that he had clothes, food, and his cell phone inside of the shed.

At trial, Appellant testified that he did not intentionally or knowingly take fentanyl or methamphetamine on the day he went to the hospital. He explained that on that day, he was working at Jose Santiago's residence. Appellant stated that he saw Santiago put the green bag that contained the fentanyl inside of the shed. According to Appellant, he was only allowed to go into the shed when Santiago was present, and he did not go into the shed on the day in question.

Appellant testified that he saw Santiago go into the shed with a pack of cigarettes and kneel down in front of the sofa. When Santiago came out of the shed, he gave Appellant a cigarette. Appellant said that Santiago lit the cigarette for him and then left. Appellant inhaled the cigarette a few times and then started gasping for air and fell to the ground.

Appellant further testified that he did not have his phone with him on the day in question because Santiago had it. He claimed no memory of being treated by medical personnel at the scene or in the hospital or being interviewed by Officer Guerrero. Appellant maintained that Santiago tried to poison him with the fentanyl.

*Analysis*

In his sole issue, Appellant argues that the evidence is insufficient to show that he possessed fentanyl.

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

A. *Standard of Review*

We review a challenge to the sufficiency of the evidence, regardless of whether it is framed as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). In reviewing the sufficiency of the evidence to support a conviction, we must "consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found that the State has proven the essential elements of the crime beyond a reasonable doubt." *Baltimore v. State*, 689 S.W.3d 331, 341 (Tex. Crim. App. 2024) (citing *Jackson*, 443 U.S. at 319). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021) (quoting *Jackson*, 443 U.S. at 319). Therefore, if the record supports conflicting inferences, the reviewing court must "presume that the factfinder resolved the conflicts in favor of the prosecution" and defer to the factfinder's factual determinations. *Garcia v. State*, 667 S.W.3d 756, 762 (Tex. Crim. App. 2023) (quoting *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012)). "[A] reviewing court does not sit as the thirteenth juror and may not substitute its judgment for that of the factfinder by reevaluating the weight and credibility of the evidence." *Id.* (quoting *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010)); *see* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007).

Under this standard, we consider all the evidence admitted at trial, including evidence that may have been improperly admitted, and treat direct and circumstantial evidence equally. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013);

4

*Isassi*, 330 S.W.3d at 638; *Starks v. State*, 684 S.W.3d 868, 873 (Tex. App.— Eastland 2024, no pet.); *Ruiz v. State*, 631 S.W.3d 841, 851 (Tex. App.—Eastland 2021, pet. ref'd). In this regard, it is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish the defendant's guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)); *Lee v. State*, 676 S.W.3d 912, 915 (Tex. App.—Eastland 2023, no pet.). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, we may not use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). We consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). But "juries trump both trial and appellate judges on weight-of-evidence determinations." *Evans v. State*, 202 S.W.3d 158, 164 (Tex. Crim. App. 2006) (citing *Jackson*, 443 U.S. at 326).

B. *Applicable Law: Possession*

"Possession" is defined as "actual care, custody, control, or management." HEALTH & SAFETY § 481.002(38); TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2024). In this regard, to prove unlawful possession of a controlled substance, the State must establish that the accused exercised care, control, or management over the contraband and knew that the substance was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). The elements of possession may be proven through direct or circumstantial evidence, but "[r]egardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection

with the drug was more than fortuitous." *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).

Appellant's mere presence in the same place as the controlled substance is insufficient to support a possession finding. *Evans*, 202 S.W.3d at 162. But presence or proximity, *when combined with other evidence*, either direct or circumstantial, may establish possession. *Id.*

Texas courts have formulated the "affirmative links rule," which provides that "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Poindexter*, 153 S.W.3d at 406 (alteration in original) (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)); *see Evans*, 202 S.W.3d at 162 n.12 (listing affirmative links recognized by courts); *see also Tate v. State*, 500 S.W.3d 410, 413–14 (Tex. Crim. App. 2016). The affirmative links rule is routinely employed to establish possession when the accused is not in exclusive possession of the place where the drugs are found; it is designed "to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *Poindexter*, 153 S.W.3d at 406.

The following links have been applied to infer knowledge that relate to the possession of contraband:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether

6

other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Tate*, 500 S.W.3d at 414 (quoting *Evans*, 202 S.W.3d at 162 n.12). It is not the number of identified links that is dispositive; rather, it is the logical force of all of the evidence, both direct and circumstantial, that is the determining factor. *Evans*, 202 S.W.3d at 162.

C. *Sufficiency of the Evidence*

Appellant contends that the State failed to produce sufficient evidence that he possessed fentanyl. We conclude that the cumulative force of the evidence could have led a rational juror to believe that Appellant possessed fentanyl. *See Baltimore*, 689 S.W.3d at 341.

The State presented evidence that Appellant was lying unconscious approximately ten feet from where the fentanyl was observed in plain view. There was further evidence that Appellant exhibited symptoms consistent with a fentanyl overdose and he was treated for a fentanyl overdose. The nurse who treated Appellant at the hospital testified that Appellant admitted to a police officer that he had used fentanyl. In addition, there was drug paraphernalia near the fentanyl.

Appellant had access to the shed where the fentanyl was located because he admitted that he kept clothes and food inside of the shed. A cell phone was found in close proximity to the fentanyl. Officer Guerrero described the cell phone to Appellant, and Appellant claimed ownership of the phone.

Appellant acknowledges that the State presented evidence that he was in close physical proximity to the shed where the fentanyl was found and that his personal belongings were in the shed. He argues, however, that there was no evidence to

7

rebut his testimony that he was not allowed to enter the shed when Santiago was not present, and that Santiago owned the green bag that contained the fentanyl. Evidence is not insufficient merely because Appellant offered a different explanation of the facts. *See Jenkins v. State*, No. 01-05-00299-CR, 2006 WL 23323, at *6 (Tex. App.—Houston [1st Dist.] Jan. 5, 2006, pet. ref'd) (mem. op., not designated for publication). It is the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. Because there was evidence that Appellant worked at the residence, that he kept his personal belongings in the shed, and his cell phone was found in the shed near the fentanyl, there was evidence to support the jury's rejection of Appellant's claims. *See Rodriguez v. State*, No. 11-17-00214-CR, 2020 WL 1887716, at *3 (Tex. App.—Eastland Apr. 16, 2020, pet. ref'd) (mem. op., not designated for publication) (concluding that the jury was free to reject a codefendant's claim of exclusive ownership of cocaine found inside a pickup where the appellant was also present).

Furthermore, while we observe the absence of some affirmative links in this case, this absence "does not constitute evidence of innocence to be weighed against the affirmative links present." *See Mixon v. State*, 481 S.W.3d 318, 324 (Tex. App.—Amarillo 2015, pet. ref'd) (quoting *Jones v. State*, 466 S.W.3d 252, 260 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd)); *see also Carmona v. State*, No. 11-22-00125-CR, 2023 WL 8631438, at *4 (Tex. App.—Eastland Dec. 14, 2023, no pet.) (mem. op., not designated for publication) (concluding sufficient affirmative links were present, despite several missing links, including the lack of evidence that the drugs were in plain view, that she or her passenger were under the influence, that she made incriminating statements, that she attempted to flee, or that she possessed large amounts of cash).

Viewing the evidence in the light most favorable to the verdict, we hold that there is sufficient evidence from which a rational trier of fact could have found beyond a reasonable doubt that Appellant intentionally or knowingly possessed the fentanyl. *See Baltimore*, 689 S.W.3d at 341; *Tate*, 500 S.W.3d at 417–18; *see also* HEALTH & SAFETY § 481.002(38), .115(a), (d); PENAL § 1.07(a)(39). We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS
JUSTICE


August 29, 2025

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.