**Patrick LIPSCOMB, Appellant**

**v.**

**The STATE of Texas, Appellee**

**NO. 01-16-00549-CR**

Court of Appeals of Texas,
Houston (1st Dist.).

Opinion issued July 6, 2017

Discretionary Review Refused
October 25, 2017

James F. Pons, 10900 N.W. Fwy., Ste. 230, Houston, TX 77092, for Appellant.

Kim Ogg, District Attorney—Harris County, 1201 Franklin, Suite 600, Houston, TX 77002, Cory Stott, Assistant District Attorney, Harris County, Texas, 1201 Franklin, Suite 600, Houston, TX 77002, for Appellee.

Panel consists of Justices Higley, Bland, and Brown.

## OPINION

Harvey Brown, Justice

Patrick Lipscomb was tried and convicted for possession of a controlled substance, namely, methamphetamine.[1] In two issues, Lipscomb contends that (1) the trial court erred in denying his motion to suppress evidence seized during a warrantless search of his apartment and (2) the evidence is insufficient to prove that he knowingly possessed the seized contraband. We affirm.

### Factual and Procedural Background

One evening, Officers C. Mayfield and G. Anderson were dispatched to a shooting in progress at an apartment complex in southwest Houston. The dispatch operator told them that there had been some sort of fight, someone had been shot, and suspects were still at the scene. The officers arrived at the apartment complex in about two minutes.

The officers found Lipscomb sitting on stairs in front of one of the apartments. Lipscomb was bleeding, and the front door of the apartment was open and riddled with bullet holes. Lipscomb told the offi-

---

1. *See* TEX. HEALTH & SAFETY CODE § 481.115(a), (d).

cers that the apartment was his residence and that he had been shot while inside. He also told them that the gunmen had fled and that he did not know whether there was anyone else injured inside. The officers then entered the apartment and conducted a protective sweep to clear the scene.

The officers did not find anyone inside the apartment. They did, however, find evidence indicating that the apartment was a "narcotics house." The officers saw a television set up as a surveillance-camera monitor. They saw bar brackets and two-by-fours used to barricade the front door. And they saw, sitting in plain view on the kitchen counter, a small scale, a baggie of Xanax pills, and an open "hide-a-can"—i.e., a container designed to appear like a drink can (in this case, an energy drink) with a "false lid" under which contraband can be secreted. The open hide-a-can contained another baggie of pills, which the officers seized and sent to a laboratory for analysis. The analysis revealed that the pills contained a little over four grams of methamphetamine.

Lipscomb was indicted for possession of a controlled substance. He filed a motion to suppress the contraband and other evidence seized by the officers during their protective sweep, which the trial court denied. The jury found Lipscomb guilty, and the trial court sentenced Lipscomb to six years' confinement. Lipscomb appeals.

### Sufficiency of Evidence

We begin by considering Lipscomb's second issue, in which he contends that there was legally and factually insufficient evidence to prove that he knowingly possessed the contraband seized from his apartment.

## A. Standard of review and applicable law

We review a challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 318–20, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). *See Brooks v. State*, 323 S.W.3d 893, 894–913 (Tex. Crim. App. 2010) (plurality op.). Under the *Jackson* standard, evidence is insufficient when, considered in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 317–19, 99 S.Ct. at 2788–89; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from that evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to witness testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981); *Jaggers v. State*, 125 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). The jury may choose to believe or disbelieve any part of a witness's testimony. *See Davis v. State*, 177 S.W.3d 355, 358 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Inconsistencies or contradictions in a witness's testimony do not destroy that testimony as a matter of law. *McDonald v. State*, 462 S.W.2d 40, 41 (Tex. Crim. App. 1970).

The *Jackson* standard defers to the factfinder to resolve any conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from "basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Clayton*, 235 S.W.3d at 778. We presume that the factfinder resolved any conflicts in the evi-

dence in favor of the verdict and defer to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793. If we conclude that the evidence is insufficient under this standard, we must reverse the judgment and enter an order of acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982).

■ A person commits the offense of possession of a controlled substance if he "knowingly or intentionally" has "actual care, custody, control, or management" of a controlled substance. TEX. HEALTH & SAFETY CODE §§ 481.002(38), .115(a). In a prosecution for possession of a controlled substance, the State must prove beyond a reasonable doubt that (1) the defendant exercised control, management, or care over the substance and (2) the defendant knew the substance possessed was contraband. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).

■ Regardless of whether the evidence is direct or circumstantial, the State must prove that the defendant's connection with the controlled substance was more than fortuitous. *Evans*, 202 S.W.3d at 161. The defendant's mere presence at the residence where the substance is found is insufficient, by itself, to prove possession. *Id.* at 162. However, the defendant's presence at the residence where the substance is found, when combined with other evidence affirmatively linking the defendant to the substance, may be sufficient to prove possession beyond a reasonable doubt. *Id.*

■ Texas courts have identified numerous factors that may affirmatively link a defendant to contraband, including:

(1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Id.* at 162 n.12; *see Poindexter*, 153 S.W.3d at 409 n.24 (affirmative link connecting contraband to accused "can be established when the contraband is in plain view or when the contraband is hidden in a place tied to the accused"). It is "not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162; *see Roberson v. State*, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) ("Indeed, the number of linking factors present is not as important as the 'logical force' they create to prove that the crime was committed.").

## B. Legal sufficiency

■ Lipscomb contends that the evidence is legally insufficient to prove that he knowingly possessed the contraband seized from his apartment. According to Lipscomb, the evidence is legally insufficient because (1) even if there is evidence that the contraband was in the plain view of the officers when they conducted their

protective sweep, there is no evidence that the contraband was ever in the plain view of Lipscomb; (2) there is no evidence that Lipscomb knew the pills in the hide-a-can contained methamphetamine (and not, say, vitamins or sugar); (3) there were over a dozen people inside his apartment when the shooting occurred, any one of whom could have brought the contraband to the apartment and left it on the countertop; (4) there is no evidence that Lipscomb actually leased the apartment; and (5) there is evidence that at least one other person, Lipscomb's sister, resided at the apartment on the date of the shooting.

At trial, the State presented evidence of numerous factors affirmatively linking Lipscomb to the contraband. And looking at this evidence in the light most favorable to the verdict, we conclude that there was sufficient evidence that Lipscomb had "actual care, custody, control, or management" of the contraband.

The officers testified that Lipscomb was present when the search was conducted, sitting on the stairs just outside the apartment. *Evans*, 202 S.W.3d at 162 n.12 (affirmative link may include "the defendant's presence when a search is conducted"). The officers also testified that Lipscomb admitted that he was inside the small apartment at the time he was shot, which indicates that the contraband had been in Lipscomb's plain view and readily accessible to him. *Id.* (affirmative link may include "whether the contraband was in plain view" and "the defendant's proximity to and the accessibility of the narcotic").

The State presented evidence that the apartment was Lipscomb's residence and that Lipscomb was the only person who lived there at the time of the shooting. *Id.* (affirmative link may include "whether the defendant owned or had the right to possess the place where the drugs were found"). The officers testified that Lips-

comb admitted that he lived at the apartment. *Id.* (affirmative link may include "whether the defendant made incriminating statements when arrested"). The officers further testified that inside the apartment they found one of Lipscomb's bank account statements, which had been mailed to Lipscomb at the apartment's address, a picture of Lipscomb and three friends, and a bedroom full of men's clothing. Although Lipscomb's sister testified that her clothes were in the bedroom as well, Officer Mayfield testified that he "didn't see any female clothing" and that it was "all male." Officer Anderson likewise testified that there was "no sign of female clothes" and that it "surely was a male's apartment."

Finally, the State presented evidence that the apartment was a narcotics house. *Id.* (affirmative link may include "whether other contraband or drug paraphernalia were present"). The officers testified that inside the apartment they found a television set up as a surveillance-camera monitor; bar brackets and two-by-fours used to barricade the front door; and a scale, a baggie of Xanax, and a hide-a-can laying in plain view on the kitchen counter next to a picture of Lipscomb. The officers' testimony was corroborated by photographs of Lipscomb's apartment.

From this evidence, a rational jury could have found that Lipscomb "knowingly and intentionally" had "actual care, custody, control, or management" of the contraband seized by the officers during their protective sweep. Presuming that the jury resolved all conflicts in the evidence in favor of the verdict and deferring to that resolution, we hold that the evidence is legally sufficient to support the jury's finding that Lipscomb is guilty of possession of a controlled substance.

## C. Factual sufficiency

 Lipscomb further contends that the evidence is factually insufficient to

prove that he knowingly possessed the contraband seized from his apartment. The Court of Criminal Appeals, however, has abolished factual-sufficiency review of issues on which the State bore the burden of proof at trial. *See Brooks*, 323 S.W.3d at 894–95 (plurality op.); *id.* at 926 (Cochran, J., concurring); *see also Howard v. State*, 333 S.W.3d 137, 138 n.2 (Tex. Crim. App. 2011) (explaining that *Brooks* "abolished factual-sufficiency review"). Thus, legal sufficiency "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks*, 323 S.W.3d at 895. We have already held that the evidence is legally sufficient to support the jury's verdict. Thus, Lipscomb's contention that the evidence is factually insufficient presents nothing for our review.

Accordingly, we overrule Lipscomb's second issue.

### Motion to Suppress

We next consider Lipscomb's first issue, in which he contends that the trial court erred in denying his motion to suppress the evidence seized by the police during their protective sweep of his apartment. Lipscomb argues that the trial court's ruling was erroneous because the State failed to show that (1) the responding officers had an objectively reasonable belief based on specific and articulable facts that there was a person inside the apartment who posed a danger to the officers and others in area and (2) the seized contraband was in the officers' plain view when they swept the apartment.

### A. Standard of review and applicable law

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *See Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).

First, we afford "almost total deference" to the trial court's determinations of historical facts and rulings on mixed questions of law and fact that depend on an evaluation of credibility and demeanor. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012); *Carmouche*, 10 S.W.3d at 327; *Sayers v. State*, 433 S.W.3d 667, 673 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The "trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Sayers*, 433 S.W.3d at 673. The trial court may believe or disbelieve all or part of the witnesses' testimony. *Ross*, 32 S.W.3d at 855; *Sayers*, 433 S.W.3d at 673.

Second, we review de novo the trial court's rulings on questions of law and mixed questions of law and fact that do not depend on an evaluation of credibility and demeanor. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003); *Carmouche*, 10 S.W.3d at 327; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Sayers*, 433 S.W.3d at 673.

When neither party requests findings of fact or conclusions of law, we imply the necessary findings to support the trial court's ruling, so long as the evidence viewed in the light most favorable to the trial court's ruling supports those findings. *Davila v. State*, 441 S.W.3d 751, 756 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). We will uphold the trial court's ruling if it is "reasonably supported by the record and is correct on any theory of law applicable to the case." *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013); *see Sayers*, 433 S.W.3d at 673.

The United States and Texas Constitutions protect against unreasonable searches and seizures. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. If police officers search a residence without a warrant or consent, the search is presumptively unreasonable unless it falls within an exception to the warrant requirement. *See Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010); *see also Davila*, 441 S.W.3d at 756–57.

The State contends that the officers' search of Lipscomb's apartment fell within the protective-sweep exception. Under the protective-sweep exception, when an officer arrives at a residence in response to a reported emergency and has an objectively reasonable belief, based on specific and articulable facts, that there may be a person inside the residence who poses a danger to the officer or to others in the area, the officer may perform a "protective sweep" of the residence without a warrant or consent. *Maryland v. Buie*, 494 U.S. 325, 327, 110 S.Ct. 1093, 1095, 108 L.Ed.2d 276 (1990); *Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000).

A "protective sweep" is a quick and limited search of the premises conducted to protect the safety of police officers or others. *Buie*, 494 U.S. at 327, 110 S.Ct. at 1094; *Reasor*, 12 S.W.3d at 815. It is generally conducted incident to an arrest, but not necessarily. *See United States v. Gould*, 364 F.3d 578, 584–86 (5th Cir. 2004); *see also Valtierra*, 310 S.W.3d at 452.

A protective sweep is not a full search of the premises; it involves only a cursory inspection of those spaces where a person might be hiding. *Buie*, 494 U.S. at 327, 110 S.Ct. at 1094; *Reasor*, 12 S.W.3d at 816–17. It may last only long enough to dispel the reasonable suspicion of danger and no longer than officers are justified in remaining in the home. *Buie*, 494 U.S. at 335–36, 110 S.Ct. at 1099; *Gould*, 364 F.3d at 587; *Reasor*, 12 S.W.3d at 816.

During a protective sweep, officers may seize evidence within their plain view. For the plain-view exception to apply, "two requirements must be met: 1) the officer must be in a proper position to view the item or lawfully be on the premises; and 2) the fact that the officer has discovered evidence must be immediately apparent." *Joseph v. State*, 807 S.W.2d 303, 308 (Tex. Crim. App. 1991); *see Nichols v. State*, 886 S.W.2d 324, 325 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

"This second prong does not require the officer to 'know' that certain items are evidence of a crime." *Nichols*, 886 S.W.2d at 325–26. Instead, it requires the officer to have "probable cause to believe the property is associated with some criminal activity." *Id.* at 326. In determining whether there is probable cause, the "officer may rely on his training and experience to draw inferences and make deductions that might well elude an untrained person." *Id.*

## B. Protective sweep

Lipscomb argues that the trial court erred in denying his motion to suppress because the State failed to prove that the officers had an objectively reasonable belief, based on specific and articulable facts, that there might be a person in Lipscomb's apartment who posed a danger to the officers or to others in the area. We disagree.

Officer Mayfield testified that he and his partner, Officer Anderson, arrived at Lipscomb's apartment complex within two minutes of receiving a dispatch to a shooting in progress. The dispatch operator told them that people were fighting, someone

had been shot, and suspects were still at the scene. When the officers arrived, they found Lipscomb sitting on stairs in front of an apartment. Lipscomb was bleeding, and the apartment's front door was open and riddled with bullet holes. Lipscomb told them that the apartment was his residence and that he had been shot while inside. Lipscomb said that the gunmen had left and that he did not know whether anyone else had been injured. Officer Mayfield testified that he and Officer Anderson then entered the apartment to "clear the scene" and make sure there were not any gunmen or shooting victims inside. Officer Anderson testified that they were inside the apartment for "just a few minutes" because it does not "take long to do a sweep."

Viewing the evidence in the light most favorable to the trial court's ruling and affording "almost total deference" to the trial court's findings of fact, we hold that Officers Mayfield and Anderson had an objectively reasonable belief, based on specific and articulable facts, that there might have been a person inside Lipscomb's apartment who posed a danger to them or to others in the area. The officers knew that there had been a shooting and that at least one person had been shot. They did not know whether there were any suspects inside the apartment, but they had reason to believe that there might be, as they had received conflicting information from the dispatch operator and Lipscomb, who was admittedly unsure whether anyone was still inside his apartment. Because the officers' belief was objectively reasonable, their protective sweep of Lipscomb's apartment was lawful.

## C. Seizure of contraband

Lipscomb next argues that the trial court erred in denying his motion to suppress because the State failed to prove that the contraband fell within the plain-view exception to the warrant requirement.

 Lipscomb first argues that the exception did not apply because the contraband was not actually in plain view. We disagree.

Officer Mayfield testified that, while performing the protective sweep, he noticed a hide-a-can sitting on the kitchen counter in plain view. Officer Mayfield further testified that the hide-a-can's lid was off, so he "just lean[ed] over[,]" "peeked inside[,]" and "immediately saw" a baggie full of pills. Thus, Officer Mayfield's testimony supports the trial court's finding that the contraband was in the officers' plain view.

 Lipscomb next argues that the contraband did not fall within the plain-view exception because there is no evidence that it was "immediately apparent" to the officers that they had discovered contraband. Again, we disagree.

Officer Mayfield testified that he saw a plastic baggie full of pills stuffed inside the hide-a-can. Officer Mayfield further testified that he immediately recognized the pills as contraband because he knew from traffic stops that hide-a-cans have a "false lid" used to "hide stuff" like "dope...." *See Sullivan v. State*, 626 S.W.2d 58, 60 (Tex. Crim. App. [Panel Op.] 1981) (explaining that "State can show that the seizing officer was aware, at the time of the seizure, that contraband drugs are commonly packaged in a particular manner"); *Nichols*, 886 S.W.2d at 326 (explaining that officers "may rely on [their] training and experience to draw inferences and make deductions that might well elude an untrained person"). Finally, Officer Mayfield testified that a scale and bag of Xanax were on the kitchen counter next to the contraband and that the apartment

had the trappings of a "narcotics house," including a television set up as a surveillance-camera monitor and bar brackets for two-by-fours to barricade the front door, all of which underscores why it would have been immediately apparent to him that the pills were contraband. *See Sullivan*, 626 S.W.2d at 60 (an officer's "specialized knowledge, in combination with suspicious facts and circumstances, can sustain the State's burden of proof").

Viewing the evidence in the light most favorable to the trial court's ruling, and affording "almost total deference" to the trial court's findings of fact, we hold that the contraband was seized lawfully because it fell within the plain-view exception to the warrant requirement and that the trial court did not err in denying Lipscomb's motion to suppress. We overrule Lipscomb's first issue.

## Conclusion

We affirm the trial court's judgment.