

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-18-00298-CR

---

BENNY SMITH, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2017-412,440; Honorable John J. "Trey" McClendon III, Presiding

---

October 23, 2019

## MEMORANDUM OPINION

### Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Benny Smith, brings this appeal, challenging his conviction for possession of a controlled substance, methamphetamine, in an amount of more than four grams but less than 200 grams, with the intent to deliver,[1] and the resulting sixty-year sentence.[2] Through two issues, Appellant argues the trial court erred in denying his

---

[1] TEXAS HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2017). As indicted, the offense was punishable as a felony of the first degree. *Id.* at § 481.112(d).

[2] TEX. PENAL CODE ANN. § 12.32 (West 2019). As a felony of the first degree, this offense was punishable by imprisonment for life or for any term of not more than ninety-nine years or less than five years and a fine not to exceed $10,000. The indictment also contained an enhancement paragraph setting forth a previous final felony conviction. During punishment, Appellant pleaded "true" to the allegation in that paragraph.

motion to suppress evidence and also asserts the evidence presented at trial was insufficient to support his conviction. We affirm his conviction.

BACKGROUND

Appellant was charged via a two-count indictment with fraudulent use or possession of identifying information and with "knowingly possess[ing], with intent to deliver, a controlled substance, namely, methamphetamine, in an amount of four grams or more but less than 200 grams." At trial, the State dismissed Count 1 and proceeded only on Count 2, the knowing possession of methamphetamine with intent to deliver.

In the summer of 2016, a gas station employee informed Lubbock police that a man used a counterfeit bill to pay for items. When the responding officer arrived, he spoke with Appellant, a male matching the description provided by the employee to police. The officer testified Appellant appeared "confused" when the officer detained him and placed him in handcuffs. Appellant then told the officer he had received the money from "a guy in the Hotel parking lot when he was asking for change." Appellant told the officer he was unaware that the money was counterfeit.

Police then asked Appellant for consent to search his vehicle. Appellant gave consent for them to do so. Officers subsequently found several small baggies, one of which was believed to contain narcotics residue and one of which appeared to contain methamphetamine. They also found marijuana. Officers also found checks with Appellant's name on them and Appellant's wallet. Among the items found were several debit cards and other items that belonged to victims of car burglaries that had occurred the previous month. Appellant told the officer that items belonging to other people were in the vehicle and that he had purchased the vehicle a few weeks prior.

2

During his conversation with police, Appellant provided two pieces of information that led to further investigation. First, as noted, he told police he obtained the money from a man in the hotel parking lot. Second, he told officers, after the search of his vehicle, that he was staying at that same hotel, a Days Inn. He did provide the police with the address and his hotel room number, 108, but he did not give them consent to search his hotel room. The information from Appellant led police to go to the Days Inn and inquire whether Appellant had a room there. An employee of the hotel confirmed he did and directed police to room 102.

When the police went to that room, a female looked out the window and then opened the door. When asked, she told police Appellant was her boyfriend. The officer told the woman he was going to prepare a search warrant and she needed to wait outside the room while he did so. In response to the officer's question, she told the officer no one else was in the room. The officer conducted a protective sweep of the room to ensure there were no other occupants. While doing so, the woman told the officer, "[h]e has drugs in here." When the officer inquired further, she told him Appellant had methamphetamine and directed him to the nightstand. She told the officer the things on top of the nightstand were hers. On the nightstand, the officer could see a glass meth pipe, a laptop computer and a printer. The woman told him the computer and printer belonged to her friends and that she was trying to fix them. She also confessed to the attempted use of forged checks. Appellant told police everything in the hotel room was his but later told the police he said this in order to keep his girlfriend out of trouble.[3]

---

[3] An officer testified the girlfriend was arrested along with Appellant.

Appellant also later told the police "where the meth was located in the—inside the hotel room."

After the search warrant was issued, police recovered methamphetamine that was later tested, marijuana, a gun, drug paraphernalia, a digital scale, a ledger, a computer, and a printer. It was this evidence that was the subject of Appellant's motion to suppress.[4] During the hearing on his motion to suppress, Appellant argued the search warrant was invalid because the affidavit in support of the warrant did not contain sufficient probable cause. Specifically, Appellant asserted that police failed to set forth a sufficient nexus between the counterfeit bill he tried to use at the gas station and the items found in his vehicle at the gas station and any items that might be found in his hotel room. After hearing the testimony of the officer who prepared the affidavit in support of the search warrant and considering the arguments of the parties, the trial court denied Appellant's motion.

At the close of trial, the jury found Appellant guilty as charged in Count 2 of the indictment. Following a punishment hearing, the jury assessed punishment as noted. This appeal followed.

### ISSUE ONE—PROBABLE CAUSE TO ISSUE SEARCH WARRANT

Through his first issue, Appellant contends the trial court erred in denying his motion to suppress because the State failed to show a "nexus" between (1) the counterfeit twenty-dollar bill he used at the gas station and the items found in his vehicle and (2) the items found in his hotel room, the place sought to be searched under the search warrant.

---

[4] Appellant filed his first motion to suppress prior to trial. The court denied that motion without a hearing. Appellant filed a second motion to suppress after a visiting judge determined his re-urged motion warranted a hearing.

4

Appellant confuses the legal requirement for a "nexus" between himself and the evidence seized with a connection between the criminal activity for which he was originally arrested—passing counterfeit money—and the evidence establishing the criminal activity for which he was charged—possession of a controlled substance, with intent to deliver. What Appellant appears to be complaining of is the absence of any probable cause logically connecting the two offenses. That is simply not the law. It is immaterial whether there is a "nexus" between Appellant's criminal activity of passing counterfeit money and his criminal activity of possessing a controlled substance. What is critical is whether there was any probable cause to issue a search warrant with respect to his hotel room in the first place.

Under the Fourth Amendment to the United States Constitution, a warrant may issue only on a showing of probable cause. *Bonds v. State,* 403 S.W.3d 867, 872-73 (Tex. Crim. App. 2013) (citing U.S. CONST. amend IV). Probable cause exists when, "under the totality of the circumstances, there is a fair probability or substantial chance that contraband or evidence of a crime will be found at the specified location. It is a flexible and nondemanding standard." *Id.* at 873 (citations omitted). To justify the issuance of a search warrant, the sworn affidavit filed with the request must set forth facts indicating why evidence of an illegal activity will be found in a particular place. *Garza v. State,* No. 13-16-00476-CR, 2019 Tex. App. LEXIS 605, at *3 (Tex. App.—Beaumont Jan. 31, 2019, pet. ref'd) (mem. op., not designated for publication) (citing *U.S. v. Bass,* 785 F.3d 1043, 1049 (6th Cir. 2015) (citing *Illinois v. Gates,* 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)). The affidavit must show "a nexus between the place to be searched and things to be seized, such that there is a substantial basis to believe that the things to be seized will be found in the place searched." *Id.*

5

Appellate courts usually review a trial court's ruling on a motion to suppress under a bifurcated standard, giving almost total deference to the trial court's findings of fact but reviewing conclusions of law *de novo*. *State v. McLain,* 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). But, when ruling on a motion to suppress evidence obtained via a search warrant, our review utilizes a different standard. *Id.* The trial court determines whether probable cause existed to support a search warrant by considering only the information contained within the affidavit's four corners. *Bonds,* 403 S.W.3d at 873 (citations omitted). When we review a magistrate's decision to issue a search warrant, we apply a "highly deferential standard of review because of the constitutional preference for searches conducted pursuant to a warrant over warrantless searches." *Id.* (citation omitted). We will uphold the magistrate's determination regarding probable cause as long as the magistrate had a substantial basis for finding probable cause existed. *Id.* (citation omitted). The magistrate is entitled to interpret a search warrant affidavit in a "non-technical, commonsense manner and may draw reasonable inferences solely from the facts and circumstances contained within the affidavit's four corners." *Id.* (citation omitted). Appellate courts should not overturn the magistrate's decision by interpreting the affidavit in a "hypertechnical, rather than a common-sense, manner." *Id.* (citation omitted).

Here, the search warrant was based on the sworn affidavit of Officer Weems. In that affidavit he advised the magistrate that an occupant of the premises, Appellant's girlfriend, stated to the police that methamphetamine was located in the hotel room. The officer also personally witnessed the presence of a computer and printer, possibly connected to the distribution of counterfeit money, and the occupant further confessed to attempting to use forged checks. Given the first-hand information contained within the

affidavit, we find the magistrate had a substantial basis for determining probable cause existed to search Appellant's hotel room as described in the affidavit and warrant. The information contained in the affidavit permitted the magistrate to infer that evidence of counterfeit bills and the possession of illegal substances would be located at the hotel. *McLain,* 337 S.W.3d at 274 ("reviewing courts should only be concerned with whether the magistrate's determination in interpreting and drawing reasonable inferences from the affidavit was done in a commonsensical and realistic manner"). Accordingly, we overrule Appellant's first issue.

### ISSUE TWO—SUFFICIENCY OF THE EVIDENCE TO SUPPORT CONVICTION

Via his second issue, Appellant contends that without the evidence that should have been suppressed, i.e., all the items obtained during the officers' search of his hotel room, the evidence was insufficient to support his conviction. Because a sufficiency review includes a review of all evidence, properly or improperly admitted, we must disagree with Appellant's contention.

We review the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia.* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State,* 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010). Under that standard, a reviewing court must consider all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Gear v. State,* 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citations omitted). "All the evidence" includes direct and circumstantial evidence and includes properly or improperly admitted evidence. *Dixon v. State,* 566 S.W.3d 348, 358 (Tex. App.—Amarillo 2018, no pet.) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). *See also*

*Balderas v. State,* 517 S.W.3d 756, 766 (Tex. Crim. App. 2016) ("Our review of 'all the evidence' includes evidence that was properly and improperly admitted.").

The jury is the only judge of the weight and credibility of the evidence and we assume the fact finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014) (citation omitted). We determine whether, based on the evidence and reasonable inferences drawn therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Isassi v. State,* 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (citations omitted).

A person commits the offense of possession of a controlled substance with intent to deliver if he possessed a controlled substance, with the intent to deliver the controlled substance to another and he knew that the substance in his possession was a controlled substance. *Reyna v. State,* No. 07-18-00062-CR, 2019 Tex. App. LEXIS 1350, at *3-4 (Tex. App.—Amarillo Feb. 22, 2019, no pet.) (mem. op., not designated for publication) (citing TEX. HEALTH & SAFETY CODE ANN. § 481.112(a); *Nhem v. State,* 129 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2004, no pet.)). Possession is defined as the "actual care, custody, control, or management" of the substance. *Id.* (citing TEX. PENAL CODE ANN. § 1.07(a)(39) (West 2019); *Lipscomb v. State*, 526 S.W.3d 646, 652 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd)). Intent to deliver a controlled substance can be proved by circumstantial evidence, including evidence regarding an accused's possession of the contraband. *Williams v. State*, No. 01-06-00401-CR, 2007 Tex. App. LEXIS 8302, at *13 (Tex. App.—Houston [1st Dist.] Oct. 18, 2007, no pet.) (mem. op., not designated for publication) (citing *Mack v. State,* 859 S.W.2d 526, 528 (Tex. App.—Houston [1st Dist.] 1993, no pet.)). Other factors that may be considered include the

8

nature of the location at which the accused was arrested, the quantity of the contraband, and the presence of other drugs and paraphernalia. *Id.* (citing *Williams v. State,* 902 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd)).

When a defendant is not in exclusive control of the place in which contraband is found, as was true here, the State must show possession through other facts and circumstances. *Mixon v. State,* 481 S.W.3d 318, 323 (Tex. App.—Amarillo 2015, pet. ref'd). Courts consider factors including: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Reyna,* 2019 Tex. App. LEXIS 1350, at *5 (citing *Mixon,* 481 S.W.3d at 323-24; *Lipscomb*, 526 S.W.3d at 652 (citing *Evans v. State,* 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *Poindexter v. State,* 153 S.W.3d 402, 405 (Tex. Crim. App. 2005)). The number of links is not dispositive. *Id.* (citing *Mixon,* 481 S.W.3d at 324). Instead, we consider the "logical force of all of the evidence, direct and circumstantial." *Id.* (citing *Mixon,* 481 S.W.3d at 324). The links analysis is "designed to protect an

innocent bystander from conviction based solely on [his] fortuitous proximity to someone else's drugs." *Id.* (citing *Poindexter,* 153 S.W.3d at 406).

In this case, considering all the evidence before the jury, including that evidence Appellant claims should have been suppressed and therefore not considered, we find the jury had before it sufficient evidence to show he possessed the methamphetamine with the intent to distribute it. First, Appellant consented to a search of his vehicle at the gas station. During that search, police found baggies containing what appeared to be narcotics residue and one baggie containing methamphetamine. Police also found marijuana. Police later found both of these substances in Appellant's hotel room. *See Green v. State,* No. 01-03-01070-CR, 2004 Tex. App. LEXIS 11713, at *13-16 (Tex. App.—Houston [1st Dist.] Dec. 23, 2004, pet. ref'd) (mem. op., not designated for publication) (possession of other narcotics can help establish a link to contraband found in another location).

Second, Appellant told police he was staying at the Days Inn. When police went to the Days Inn, they confirmed through management that Appellant was staying in a room there, albeit in a different room number than Appellant had originally provided. Appellant's girlfriend was in the room when police arrived. She admitted to the police she was Appellant's girlfriend and she told them Appellant had drugs in the room. Therefore, the State showed Appellant had a right to possession of the room in which the drugs and other items were found. *Reyes v. State,* No. 02-04-366-CR, 2006 Tex. App. LEXIS 38, at *6 (Tex. App.—Fort Worth Jan. 5, 2006, pet. ref'd) (mem. op., not designated for publication) (among links establishing possession of cocaine was the defendant's admission that he had registered for the hotel room in which the cocaine was found). *See also Goddard v. State,* No. 14-08-00590-CR, 2009 Tex. App. LEXIS 4680, at *7 (Tex.

App.—Houston [14th Dist.] June 18, 2009, pet. ref'd) (mem. op, not designated for publication) (among links establishing possession of crack cocaine was evidence the defendant was the registered occupant of the motel room where the drugs were found).

Third, Appellant made incriminating statements linking himself to the controlled substances. Appellant told police that "anything in the room belongs to him." A recording of that conversation was played before the jury. Appellant then made some conflicting statements concerning the methamphetamine. He admitted he smoked methamphetamine, but said he did not have any, then he also said there "might be some meth . . . in the hotel room." Not much later, Appellant offered to consent to a search of the room and to go into the room and show police where the drugs were. In addition, when the police went to the designated room, a woman who identified herself as Appellant's girlfriend told the police that Appellant "has drugs in here." She identified the drugs as methamphetamine and told the officer it was in the nightstand. *See Maeda v. State,* No. 07-09-0171-CR, 2010 Tex. App. LEXIS 9800, at *11 (Tex. App.—Amarillo Dec. 10, 2010, no pet.) (mem. op., not designated for publication) (court found sufficient links to contraband when, among other things, Appellant made incriminating statements when arrested).

Lastly, when police executed the search warrant, they recovered, among other items, methamphetamine in the amount of 11.8 grams, seven grams of marijuana, a Ruger 9mm pistol, a Glock magazine, a digital scale, and a ledger. A police officer testified at trial that, in his opinion, this evidence showed Appellant possessed the controlled substances found and he intended to sell those substances. He said, "the items that were in the room are consistent with someone buying to sell and use." *Lipscomb*, 526 S.W.3d at 652-53 (link may include whether other narcotics or drug

11

paraphernalia are present). In addition to the recordings offered, the State supported the testimony of the police officers with several photographs taken of the hotel room in which Appellant and his girlfriend were staying and a description of the evidence taken during the search.

Given the evidence before it, a reasonable jury could have rationally concluded Appellant exercised control or care over the methamphetamine, knew the substance was contraband, and intended to sell it. Accordingly, we overrule Appellant's second issue.

**CONCLUSION**

Having resolved both of Appellant's issues against him, we affirm the judgment of the trial court.

Patrick A. Pirtle
Justice

Do not publish.