

In The

Court of Appeals

Seventh District of Texas at Amarillo

No. 07-19-00183-CR

ROLANDO CASTILLO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2018-415,189, Honorable William R. Eichman II, Presiding

October 23, 2020

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

A jury convicted Appellant Rolando Castillo of the first-degree felony offense of possession of methamphetamine with intent to deliver in an amount more than four grams but less than 200 grams[1] and assessed punishment at twenty years' confinement in prison.[2] Through two issues, Appellant argues the evidence was insufficient to prove

---

[1] TEX. HEALTH & SAFETY CODE ANN. § 481.112(a),(d) (West 2017). Methamphetamine is listed in Penalty Group 1. TEX. HEALTH & SAFETY CODE ANN. § 481.102(6) (West Supp. 2020).

[2] TEX. PENAL CODE ANN. § 12.32 (West 2019) (A first-degree felony is punishable by imprisonment for life or for any term of not more than 99 years or less than 5 years and a fine not to exceed $10,000).

beyond a reasonable doubt that he possessed methamphetamine with intent to deliver and the trial court abused its discretion by submitting a deadly weapon special issue in the punishment-phase jury charge. We overrule Appellant's issues and affirm the judgment of the trial court.

## Background

In March 2018, Appellant drove his Cadillac Escalade to the home of Angalic Bishop in Slaton, Texas. Alex Ybarra was Appellant's passenger. Outside the Escalade, Appellant and Bishop argued as Appellant accused Bishop of telling lies about him. Bishop replied that the gossip originated with another woman.

During the argument, Appellant retrieved a rifle from his vehicle that Bishop said resembled "an AR" rifle, waved it in front of Bishop and her two-year-old daughter and father. Appellant said while holding the rifle that he would shoot up Bishop's house, even if her children were inside, if she mentioned Appellant again. Bishop also saw a handgun on the dashboard of the Escalade. Appellant told Bishop he was going to the other woman's house and departed. Bishop called 9-1-1 to report Appellant's intended destination and that he displayed a weapon.

Police officer James DeKraker received Bishop's call. Within ten minutes, he arrived at the other woman's home, where he found Appellant's parked Escalade, and Appellant, Ybarra, and Demetric White standing outside. Officer DeKraker testified that during the encounter Appellant was calm and cooperative, but Ybarra and White were "agitated."

2

With Appellant's permission, a backup police officer entered Appellant's vehicle and took possession of a rifle from the front passenger seat. The rifle contained a round of ammunition in the chamber. Through the open front passenger window of the vehicle, DeKraker observed a glass pipe in the cupholder and smelled "a strong odor" of marijuana coming from inside the vehicle. The officer opined based on his experience that this type of pipe is commonly used to smoke illegal substances, most commonly methamphetamine.

The evidence shows that DeKraker observed Appellant getting out of the Escalade on the driver's side, and the passenger getting out from the passenger's side. Based on the plain view evidence of the drug paraphernalia, officer DeKraker then searched Appellant's Escalade, where he discovered a box bearing a Batman insignia between the driver's seat and the console. The box contained 75 grams of methamphetamine, a vape pen containing what appeared to be THC[3] residue, a pack of cigarettes, cigarillos, a small hammer, and cardboard packages of THC wax.[4] A digital scale and a handgun were found on the dashboard. Inside the Escalade's center console, DeKraker found empty plastic baggies and $600.

Appellant denied ownership of the contents of the Batman box but stated he would accept the blame for it. Officer DeKraker testified that it would have been impossible for Appellant to operate the vehicle without being aware of the Batman box in the driver's seat area.

---

[3] "THC," or tetrahydrocannabinol, is an active substance in marijuana.

[4] Testimony at trial indicates that THC wax is the resinous extract from marijuana.

At trial, Cody Kidd, a sergeant with the narcotics division of the Lubbock County Sheriff's Office who also serves on a task force with the Lubbock office of the Drug Enforcement Administration, testified that "typically" the quantity of methamphetamine as found in Appellant's Escalade is a "dealer amount." Both Kidd and DeKraker testified that methamphetamine and other narcotics are often packaged in bags of the kind found in the console. Kidd opined that in drug operations, tools like the hammer are sometimes used to break larger pieces of methamphetamine into smaller amounts. Kidd opined without objection that the presence of a digital scale in the same vehicle as baggies, hammer, methamphetamine, and "a large amount of cash" would be consistent with someone selling narcotics.

In addition, testimony was elicited regarding potential uses of firearms during drug dealing operations. Kidd testified that narcotics dealers often possess firearms "in order to protect the product, the currency involved, the profit from it from people robbing them of their money or product."

Analysis

*Issue One*

Appellant first asserts that the evidence was insufficient to prove beyond a reasonable doubt that he possessed methamphetamine with intent to deliver. An appellate court reviews the sufficiency of the evidence under the standard of *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010). Under that standard, a reviewing court must consider all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have

4

found the essential elements of the crime beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011).

The jury is the sole judge of the weight and credibility of the evidence, and we presume the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). We determine whether, based on the evidence and reasonable inferences drawn therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

A person commits the offense of possession of a controlled substance with intent to deliver if he possesses a controlled substance, with the intent to deliver the controlled substance to another, and knows that the substance in his possession is a controlled substance. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a); *Nhem v. State,* 129 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Possession is defined as the "actual care, custody, control, or management" of the substance. TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West Supp. 2020); *Lipscomb v. State*, 526 S.W.3d 646, 652 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

To prove possession of a controlled substance, the State must prove beyond a reasonable doubt that (1) the defendant exercised control, management, or care over the substance and (2) the defendant knew the substance possessed was contraband. *Lipscomb,* 526 S.W.3d at 652 (citing *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006)). *See also Mixon v. State,* 481 S.W.3d 318, 323 (Tex. App.—Amarillo 2015, pet. ref'd). When a defendant is not in exclusive control of the place in which contraband

5

is found, the State is required to establish possession through other facts and circumstances. *Mixon,* 481 S.W.3d at 323. The many factors by which an accused may, under the unique circumstances of each case, be sufficiently "linked" to the contraband, include: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Mixon,* 481 S.W.3d at 323-24 (citations omitted); *Lipscomb*, 526 S.W.3d at 652 (citing *Evans,* 202 S.W.3d at 161; *Poindexter v. State,* 153 S.W.3d 402, 409 n.24 (Tex. Crim. App. 2005)*, abrogated on other grounds by Robinson v. State,* 466 S.W.3d 166, 173 & n.32 (Tex. Crim. App. 2015)). The number of links is not dispositive; rather, we consider the "logical force of all of the evidence, direct and circumstantial." *Mixon,* 481 S.W.3d at 324 (citation omitted). The links analysis is designed to protect an innocent bystander from conviction based solely on his "fortuitous proximity to someone else's drugs." *Poindexter*, 153 S.W.3d at 406.

Intent to deliver may be proved circumstantially. *Jordan v. State,* 139 S.W.3d 723, 726 (Tex. App.—Fort Worth 2004, no pet.). Factors courts have considered for making the intent determination include: (1) the nature of the location where the defendant was arrested; (2) the quantity of drugs the defendant possessed; (3) the packaging of the drugs; (4) the presence or absence of drug paraphernalia (for use or sale); (5) whether the defendant possessed a large amount of cash in addition to the drugs; and (6) the defendant's status as a drug user. *Id.*; *see Herrera v. State,* Nos. 07-09-00071-CR, 07-09-00072-CR, 07-09-00073-CR, 2009 Tex. App. LEXIS 6780, at *10 (Tex. App.—Amarillo Aug. 26, 2009, no pet.) (mem. op., not designated for publication). Expert testimony may be introduced to prove intent to deliver. *Jordan,* 139 S.W.3d at 726; *Herrera,* 2009 Tex. App. LEXIS 6780, at *10.

Applying the relevant law to the facts of this case, we hold that a rational jury could have found beyond a reasonable doubt that Appellant possessed methamphetamine with intent to deliver. Assessing the evidence in the light most favorable to the verdict and applying the non-exclusive factors from *Mixon*, we hold the evidence admitted at trial could lead a reasonable juror to find beyond any reasonable doubt that Appellant knew of the contraband's existence and exercised control over it. 481 S.W.3d at 323. *See also Travis v. State*, 638 S.W.2d 502, 503 (Tex. Crim. App. [Panel Op.] 1982). Specifically, the evidence shows that the methamphetamine and contraband was found in the Escalade, which Appellant had driven minutes before the search; he was present during the search (factor 1). The vehicle belongs to Appellant (factor 11). The methamphetamine was located in a Batman box in Appellant's driver's seat area and accessible to him when he was in the vehicle; it was "impossible" for Appellant not to

7

notice the box in the officer's opinion (factor 3). The officer was able to open the box, so it does not appear to have been locked or that access to Appellant was blocked. Moreover, the Batman box was accompanied by a glass pipe that is commonly used to smoke methamphetamine and a digital scale, both of which were in plain view (factor 5). The vehicle also smelled of marijuana (factor 9). When asked about the contents of the Batman box, Appellant accurately identified the substance as methamphetamine and took responsibility for the contents (factors 6, 14). Other contraband and drug paraphernalia were present, including what appeared to be THC residue, a small hammer that can be used to break up pieces of methamphetamine, and cardboard packages of THC wax (factor 10). All of these items of contraband were found alongside a large amount of cash (factor 13).

On appeal, Appellant urges that Ybarra was the one who was visibly upset and that an officer at the scene believed the contraband belonged to Ybarra based on this display. Appellant further argues the arresting officer did not see Appellant physically control the drugs and any nexus between Appellant and the contraband is weakened by the absence of DNA and fingerprint evidence. Yet, these are evidentiary matters which the jury was permitted to consider when assessing the evidence. Moreover, the absence of DNA and fingerprint evidence does not affect the legal sufficiency of the evidence. *Pena v. State,* 441 S.W.3d 635, 641-42 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). We hold that sufficient evidence supports the jury's verdict that Appellant possessed the methamphetamine.

Similarly, we hold that sufficient evidence supports the finding that Appellant possessed the evidence with a requisite intent to distribute it. TEX. HEALTH & SAFETY CODE

8

ANN. § 481.112(a). Officer Kidd testified without objection that the amount found in the Escalade was "a dealer amount." This testimony about the quantity of drugs is significant given the other evidence of drug-dealing activity from the Escalade: the scale; two guns; the presence of other drug paraphernalia; and the presence of a large amount of cash in proximity to Appellant. *See Herrera,* 2009 Tex. App. LEXIS 6780, at *10. When reviewed in a light most favorable to the jury's verdict, such evidence permitted the jury to find beyond a reasonable doubt that Appellant possessed the methamphetamine with an intent to distribute it. We overrule Appellant's first issue.

*Issue Two*

By his second issue, Appellant argues the trial court abused its discretion by submitting a deadly weapon special issue in the punishment-phase charge. Specifically, Appellant contends the State failed to present evidence showing a nexus between the weapons and the associated offense of dealing a controlled substance.[5]

We review the trial court's decision to overrule Appellant's objection and submit the deadly weapon special issue for abused discretion. *See Carter v. State,* No. 13-17-00202-CR, 2018 Tex. App. LEXIS 2427, at *7 (Tex. App.—Corpus Christi Apr. 5, 2018, pet. ref'd) (mem. op., not designated for publication) (deadly weapon instruction) (citing *Wesbrook v. State,* 29 S.W.3d 103, 122 (Tex. Crim. App. 2000)). A court does not abuse its discretion unless it acts without reference to any guiding rules and principles. *Simmons v. State,* No. 07-17-00127-CR, 2019 Tex. App. LEXIS 2760, at *4 (Tex. App.—Amarillo

---

[5] The deadly weapon special issue asked the jury to determine whether "the defendant used or exhibited a deadly weapon, to-wit: a firearm, during the commission of the offense for which he has been convicted." The jury answered, "We do."

9

Apr. 5, 2019, no pet.) (mem. op., not designated for publication) (citation and internal quotation marks omitted).

We hold that the district court properly exercised discretion in submitting the special issue during the punishment phase. A deadly weapon finding affects a defendant's eligibility for community supervision and parole. TEX. CODE CRIM. PROC. ANN. art. 42A.054(b) (West Supp. 2020); TEX. GOV'T CODE ANN. § 508.145(d) (West Supp. 2020). Article 42A.054 requires a trial judge to enter a finding in the judgment when, among other things, the evidence shows a deadly weapon was used or exhibited during the commission of the felony offense and the defendant either (1) used or exhibited such weapon or (2) was a party to the offense and knew the deadly weapon would be used or exhibited during his role in the commission of the offense. TEX. CODE CRIM. PROC. ANN. art. 42A.054(b)(1),(2). By definition, a firearm is a deadly weapon. TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (West Supp. 2020). Therefore, the only question is whether there was sufficient evidence that the deadly weapon was used or exhibited during the commission of the felony offense and that Appellant used or exhibited such weapon.

Appellant's challenge to the evidence relies exclusively on the Court of Criminal Appeals' decision in *Plummer v. State*, 410 S.W.3d 855, 856 (Tex. Crim. App. 2013). In *Plummer*, the defendant who had been moonlighting as a security guard was convicted of unlawful possession by a felon of a firearm and possession of body armor; the trial judge found the presence of the gun supported a deadly weapon in the body armor case. The question thus arose whether the presence of a firearm while the defendant simultaneously wore illegal body armor constituted use or exhibition of a deadly weapon under a predecessor statute. The Court of Criminal Appeals "granted review to decide

10

whether the term 'exhibit' in the deadly weapon statute carries with it the connotation that the deadly weapon must somehow facilitate or increase the risk of potential harm while committing the felony." *Plummer*, 410 S.W.3d at 857. The court answered the question in the affirmative and held the State was required to provide evidence connecting the deadly weapon and facilitation of the felony. *Id.* at 865.

Here, our review is not limited to whether a weapon was "exhibited;" affirmance is required if sufficient evidence shows a deadly weapon was exhibited *or used*. The *Plummer* court distinguished its factual circumstances from those presented in *Coleman v. State*, 145 S.W.3d 649 (Tex. Crim App. 2004), when the court found a defendant had used weapons to facilitate drug dealing. In that case, the court held that even though the defendant was handcuffed and in a squad car at the time of the search of his home, a rational jury could have found the defendant "used" two guns found in the home to facilitate his possession and distribution of cocaine and PCP. *Id.* at 654-55. Relevant to the court's holding was evidence that the guns were found in a room inside a safe that contained large bottles of PCP and large amounts of cash. *Id.* at 654. The court held that the proximity of drug-trade evidence to the guns permitted the jury to consider whether the defendant used the weapons to facilitate his possession and distribution of the narcotics. *Id.* at 655.

We hold that the underlying facts in *Coleman* are akin to those present in this appeal and that its analysis should guide ours. The State was not required to prove that Appellant was near the weapons or brandished them when officers were present. *Id.* at 654. In fact, as the concurrence in *Coleman* aptly illustrates, "The king in his castle 'uses' his turret cannons both when his soldiers fire them and when they sit for years awaiting

11

a possible attack. He 'uses' his halberds hanging in the hall booth for a current war and to deter a future one." *Id.* at 659 (Cochran, J., concurring). We hold that the presence of "a dealer amount" of narcotics and large sum of money near two readily-accessible guns in Appellant's Escalade permitted the jury to infer that Appellant used the weapons to facilitate Appellant's drug dealing activity and to protect the proceeds of his illegal trade. *See id.* at 655 (holding that the "cumulative effect" of evidence regarding the home's large amounts of drugs and money in proximity to the guns "could have allowed a rational jury to determine that [defendant] used the weapons to protect the narcotics and the proceeds therefrom."); *Hester v. State,* Nos. 07-07-00473-CR, 07-07-00474-CR, 07-07-00475-CR, 2009 Tex. App. LEXIS 8974 (Tex. App.—Amarillo Nov. 19, 2009, pet. ref'd) (mem. op.) (concluding in challenge of deadly-weapon finding, where gun and contraband were found in close proximity in defendant's one-bedroom house, sufficient evidence allowed fact finder to determine beyond a reasonable doubt that defendant possessed the gun and used it to facilitate possession and intended distribution of marijuana, cocaine, and methamphetamine). Even though Appellant was accompanied by Ybarra in the Escalade, Appellant demonstrated his possession, custody, and control over at least one deadly weapon when he brandished the rifle in front of Bishop mere minutes before he encountered the officers. In the face of the admitted evidence, we conclude that the trial court did not abuse its discretion by overruling Appellant's objection to the charge and submitting a deadly weapon special issue. Appellant's second issue is overruled.

12

## Conclusion

Having overruled Appellant's two issues on appeal, we affirm the judgment of the trial court.

Lawrence M. Doss
Justice

Do not publish.