**Opinion issued October 31, 2019**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-17-00734-CR

_____

## MANUEL GUTIERREZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1460210**

---

## MEMORANDUM OPINION

A jury found Manuel Gutierrez guilty of Continuous Sexual Abuse of a Child and assessed his punishment at 65 years' confinement. He appeals, contending that:

(1) the evidence is legally and factually insufficient to support the verdict;

(2) the trial court erred in allowing the prosecution to (a) introduce into evidence an incomplete version of his victims' therapy records and (b)

elicit testimony from a clinical psychologist about extraneous acts of sexual abuse committed and admitted by Gutierrez; and

(3) his attorneys provided ineffective assistance of counsel.

We affirm.

## BACKGROUND

A grand jury indicted Gutierrez for Continuous Sexual Abuse of a Child—his niece, A.V.—from April 1, 2011 through February 21, 2015. *See* TEX. PENAL CODE § 21.02. Gutierrez pleaded not guilty and was tried by a jury.

Gutierrez had resided with his sister and her family—her husband and their daughters, A.V., C.V., and G.V.—off and on over the years. He visited his sister and her family often when he did not live with them. Gutierrez was frequently alone with his nieces.

In February 2015, when A.V. was 12 years old, she told her mother that Gutierrez had sexually abused her. The following day, her younger sister C.V. divulged that Gutierrez had been sexually abusing her too.

At trial, A.V. testified that Gutierrez first molested her when she was four. The first time, he lured her with the promise of a lollipop. He then laid her on a bed and fondled her chest and vagina over her clothes.

Gutierrez repeatedly abused her thereafter. A.V. testified that he touched her vagina, both over and under her clothes, on multiple occasions. He also touched her breasts and made her touch his penis. In her testimony, A.V. recounted other

2

particular instances of sexual abuse, including one in which Gutierrez pulled down her pants and underwear, laid her down on her stomach on his bed, and put his erect penis on her buttocks and rubbed it against her. She recounted another occasion when he took out his penis and pushed her head toward it with his hand. She did not comply, but she stated that she knew he wanted her to perform oral sex.

The final incident occurred in February 2015 when A.V. went with Gutierrez to get milkshakes. In his truck, he touched her vagina over her clothes, stopping only when she moved away toward the passenger-side door. He then offered her money and asked what A.V. would do for it, and increased the offer if she could figure out what he wanted her to do. According to A.V., it was clear that Gutierrez was proposing to pay for "something sexual."

When Gutierrez and A.V. returned home, she told her mother what he had done. A.V.'s father phoned the police. The responding officer spoke with A.V. and her mother and then arrested Gutierrez.

After Gutierrez was arrested, A.V. and her mother went to the hospital, where Jamie Ferrell, a forensic nurse, performed a sexual assault examination. The exam did not reveal any physical trauma or injury, which Ferrell testified was not inconsistent with A.V.'s allegations of abuse.

The next day, C.V. disclosed that Gutierrez had been sexually abusing her too. At trial, C.V. was 13 years old. She did not remember when the abuse began. The

3

earliest incident that she could remember took place when she was eight: Gutierrez came into the bathroom and fondled her chest over her clothes. From then onward he molested her "countless times."

C.V. testified about other specific instances of abuse. When she was 10 years old, Gutierrez found her while she was changing clothes. She had taken off her shirt but was still wearing pants. Gutierrez put her on the bed and laid down on top of her. He told her to lie still and held her down. Gutierrez pulled down his pants and underwear and rubbed his penis against her vagina for a few minutes. Afterward, her pants were wet where his penis had been. She testified about another occasion on which Gutierrez rubbed or grinded his penis against her bare anus. C.V. stated that these two instances were not the only times that he had rubbed his penis on her vagina or anus in this fashion.

A.V. and C.V.'s mother subsequently took both girls to the Children's Assessment Center. Claudia Gonzalez, the Center's supervisor of forensic services, interviewed both girls about Gutierrez's abuse of them two days after A.V.'s outcry.

Dr. Marcella Donaruma, a pediatrician affiliated with the Children's Assessment Center, saw both girls in March 2015. She concluded that both A.V. and C.V. had been molested by Gutierrez based on their "highly detailed, developmentally appropriate and internally consistent accounts of sexual abuse that actually match up with each other."

4

A.V. and C.V. subsequently received counseling from Cassie Smith, a therapist with the Children's Assessment Center, for several months. At trial, Smith testified about their therapy. During therapy, A.V. told Smith that she already had tried to overdose on pills and had suicidal thoughts. Before therapy, A.V. had cut herself for about a year and half and had another episode in which she cut herself after she had been in therapy for several months. Smith opined that A.V.'s behavior was consistent with sexual abuse. Smith also testified that A.V. displayed "super sexualized behavior," which Smith stated is common among sexually abused children.

Smith further testified that C.V. suffered from "some anxiety and some mild depression." C.V. also had thought about hurting herself, but she had not formulated a plan to do so. Smith opined that Gutierrez's sexual abuse of C.V. was the cause of her emotional problems.

The prosecution also called as a witness Dr. Gerald Harris, a clinical psychologist who evaluated Gutierrez at the request of the criminal defense lawyer who initially represented him before trial. Harris testified that Gutierrez admitted to touching and propositioning A.V. when she accompanied him to buy milkshakes in February 2015. Gutierrez did not admit any other wrongdoing; however, he did tell Harris that he had moved out of his sister's house because he developed inappropriate feelings toward the children.

Over defense counsel's objection that the testimony was "more prejudicial than probative," the trial court also allowed Harris to testify about sexually inappropriate behavior that Gutierrez acknowledged he had engaged in as a child. Harris testified that Gutierrez had sexually touched his sister—A.V. and C.V.'s mother—when he and she were young children.

Harris further testified that Gutierrez had been a victim of sexual abuse as a very young child, which, in turn, caused him to engage in sexually-abusive behavior. Harris stated that Gutierrez had not received treatment for that abuse, was treatable, and could lead a successful life if he received that treatment. Harris opined that Gutierrez was not a high risk and exhibited "good characteristics in his everyday life."

Gutierrez did not testify. Nor did he call any witnesses in his defense.

After deliberating on the evidence, the jury found Gutierrez guilty. It assessed his punishment at 65 years' confinement.

## DISCUSSION

### I. Sufficiency of the Evidence

Gutierrez contends that the evidence is legally insufficient because A.V's outcry was delayed and her testimony was inconsistent; no one else saw him sexually abuse A.V.; and there was no physical evidence that he had sexually abused her.

## A. Standard of review

In a legal-sufficiency review, we view all the evidence in the light most favorable to the verdict and determine whether a rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (relying on *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We must not reevaluate the weight or credibility of the testimony; rather, we defer to the jury's resolution of conflicts in the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Inconsistencies or contradictions in a witness's testimony do not make it legally insufficient. *Estrella v. State*, 546 S.W.3d 789, 796–97 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd).

## B. Applicable law

A person commits the offense of Continuous Sexual Abuse of a Child if (1) during a period of 30 days or more, he commits two or more acts of sexual abuse against one or more victims; and (2) at the time he committed the acts, he was at least 17 years old and his victims were children younger than 14 years old, regardless of whether the actor knew the age of victims. TEX. PENAL CODE § 21.02(b).

An "act of sexual abuse" includes the offense of Indecency with a Child, as defined in section 21.11(a)(1) of the Penal Code, so long as "the actor committed the offense in a manner other than by touching, including touching through clothing, the breast of a child." *Id.* § 21.02(c)(2). Thus, predicate acts of indecency that satisfy the

7

offense of Continuous Sexual Abuse of a Child include (1) any touching by a person, including touching through clothing, of the anus or genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the actor's anus, breast, or genitals. *See id.* § 21.11(a)(1), (c).

When, as here, trial is to a jury, its members need not agree unanimously as to the specific acts of sexual abuse the actor committed or the exact dates when he committed them. *Id.* § 21.02(d). The jury need only agree unanimously that the actor committed two or more acts of sexual abuse during a period of 30 days or more. *Id.*

The uncorroborated testimony of the child suffices to support a conviction for Continuous Sexual Abuse of a Child. TEX. CODE CRIM. PROC. art. 38.07(a), (b)(1).

## C.    Analysis

Gutierrez contends that the evidence is insufficient because there was neither physical evidence nor eyewitness testimony corroborating his sexual abuse of A.V. But no corroboration is required; A.V.'s testimony, standing alone, suffices to support Gutierrez's conviction. *See* TEX. CODE CRIM. PROC. art. 38.07(a), (b)(1). A.V. testified that Gutierrez repeatedly abused her for about eight years, beginning when she was 4 years old and ending when she was 12 years old. She testified to several specific instances of indecency by contact, including two in which Gutierrez touched her vagina through her clothing. She also testified that he made her touch his penis. Based on A.V.'s testimony alone, a rational jury could find beyond a

8

reasonable doubt that Gutierrez was guilty of the offense of Continuous Sexual Abuse of a Child. *See* TEX. PENAL CODE § 21.02(b), (c)(2); *see also Buentello v. State*, 512 S.W.3d 508, 519 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (neither corroboration nor physical evidence necessary to support child's outcry).

Gutierrez further contends that the evidence is insufficient because A.V.'s outcry was delayed. Delay in coming forward to report sexual abuse, however, presents an issue of credibility. *See, e.g.*, *Emenhiser v. State*, 196 S.W.3d 915, 930 (Tex. App.—Fort Worth 2006, pet. ref'd). Credibility goes to the weight of the evidence, which was for the jury to decide. *See* TEX. CODE. CRIM. PROC. art. 38.04.

Gutierrez further contends that inconsistencies in A.V.'s testimony render the evidence insufficient. A.V.'s trial testimony differed in some respects from the pretrial statements that other witnesses attributed to her in their testimony. For example, A.V. testified that:

- Gutierrez began molesting her at the age of four, but she told Ferrell that the sexual abuse had taken place "over the last four years";

- Gutierrez offered her $200–$250 for sex in February 2015, but she told Ferrell and her mother that it was $100–$150; and

- she never actually performed oral sex on Gutierrez, but she told her mother that he had forced her to engage in oral sex.

But these and other inconsistencies do not make the evidence legally insufficient. *Estrella*, 546 S.W.3d at 796–97. The jury resolved the conflicts in the evidence against Gutierrez and we cannot reweigh the evidence. *Isassi*, 330 S.W.3d at 638.

9

Finally, we note that A.V.'s testimony and pretrial statements were not the sole evidence before the jury. C.V. similarly testified that Gutierrez repeatedly sexually abused her. The jury was entitled to consider her testimony in assessing Gutierrez's guilt with respect to the charged offense. *See* TEX. CODE CRIM. PROC. art. 38.37, § 2(b); *Castillo v. State*, 573 S.W.3d 869, 879–80 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd). In addition, Dr. Harris testified that Gutierrez admitted to the February 2015 episode of abuse against A.V.

We overrule Gutierrez's legal-sufficiency challenge.

### D. Factual sufficiency

Gutierrez contends that we should review the record for factual sufficiency. The Court of Criminal Appeals, however, has abolished factual-sufficiency review of criminal convictions. *See Butcher v. State*, 454 S.W.3d 13, 20 (Tex. Crim. App. 2015); *Lipscomb v. State*, 526 S.W.3d 646, 654 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). We therefore cannot review the record for factual sufficiency.

## II. Evidentiary Errors

Gutierrez challenges two evidentiary rulings. First, he contends that the trial court erred in admitting an incomplete version of Ferrell's therapy records. Second, he contends that the trial court erred in allowing Dr. Harris to testify as to Gutierrez's sexual abuse of his own sister when they both were children.

**A.      Error preservation, standard of review, and harmless error**

To complain about an evidentiary ruling on appeal, the complaining party must have made a proper objection at trial. TEX. R. EVID. 103(a)(1)(A). The complaint he raises on appeal must comport with the objection he made at trial. *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016).

If the complaint is preserved for review, we review a trial court's evidentiary ruling for abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). Under this standard, we may reverse the trial court only if its ruling was so clearly wrong as to be outside the zone of reasonable disagreement. *Id.* at 83.

In addition, the complaining party cannot obtain reversal due to an erroneous evidentiary ruling unless it affected his substantial rights. TEX. R. EVID. 103(a). An error that did not influence the jury or had but slight effect, when considered in light of the record as a whole, is harmless. *Thomas*, 505 S.W.3d at 927.

An evidentiary error also is harmless if the objecting party allowed the introduction of other evidence proving the same fact without objection earlier or afterward. *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010); *Lamerand v. State*, 540 S.W.3d 252, 257 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd).

**B.     Analysis**

**1.     Smith's therapy records**

During Smith's testimony, the prosecutor introduced a redacted version of her therapy records. It omitted two pages of her records discussing allegations of sexual abuse that A.V. and C.V.'s younger sister, G.V., made against their father and recanted after her older sisters accused Gutierrez of abusing them. Citing the rule of optional completeness, defense counsel objected to the omission of these two pages. The trial court overruled this objection.

Citing Rules 106 and 107 of the Rules of Evidence, Gutierrez contends on appeal that the trial court erred by excluding the two omitted pages. He argues that the two omitted pages are relevant and admissible because they cast doubt on A.V.'s and C.V.'s testimony against him by documenting false allegations of sexual abuse made by their youngest sister, G.V., against the three girls' own father.

When a party introduces part of a writing, Rule 106 allows the party's opponent to introduce any other part "that in fairness ought to be considered at the same time." TEX. R. EVID. 106. Rule 107 similarly allows the party's opponent to introduce any other writing "necessary to explain or allow the trier of fact to fully understand the part offered." TEX. R. EVID. 107. These rules embody the principle of optional completeness, which is intended to prevent any confusion, distortion, or

12

false impression that could arise from the use of part of a writing out of context. *See Delapaz v. State*, 228 S.W.3d 183, 201–02 (Tex. App.—Dallas 2007, pet. ref'd).

G.V.'s recanted allegation of abuse was not necessary for the jury to understand the part of Smith's therapy records introduced into evidence by the prosecution. Nor was her recanted allegation a matter that in fairness ought to have been considered by the jury with the remainder of Smith's therapy records. G.V. did not testify at trial and no statements made by her were introduced into evidence. G.V.'s credibility therefore was not at issue. G.V. accused her father, not Gutierrez, so her recantation does not have any tendency to make Gutierrez's guilt more or less probable than it would be without the evidence. While G.V.'s father did testify at trial, Gutierrez does not contend that G.V.'s recanted allegation bears on her father's credibility. In short, the two pages of Smith's therapy records relating to G.V.'s recanted allegation concerned a different and irrelevant subject matter.

The trial court did not abuse its discretion by allowing in the redacted version of Smith's therapy records over the defense's optional-completeness objection.

### 2. Harris's extraneous-act testimony

The prosecution elicited testimony from Dr. Harris that Gutierrez had told Harris that he had sexually touched his sister when they were children. Defense counsel objected that this testimony was "more prejudicial than probative." The trial court overruled the objection.

Gutierrez does not contest the admissibility of Harris's testimony under section 2(b) of article 38.37 of the Code of Criminal Procedure. He argues that it should have been excluded under Rule 403 of the Rules of Evidence. *See Caston v. State*, 549 S.W.3d 601, 610–11 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (trial court may exclude evidence under Rule 403 that is admissible under section 2(b)). But he allowed other witnesses to testify about this subject without objecting both before and after Harris. We thus decline to decide whether the trial court erred in admitting Harris's testimony because any error in the admission of his testimony was harmless. *See Coble*, 330 S.W.3d at 282; *Lamerand*, 540 S.W.3d at 257.

The first witness at trial to refer to Gutierrez's childhood sexual abuse of his sister was Ferrell. According to Ferrell, A.V. stated that when she told her mother about Gutierrez's abuse, her mother told A.V. that Gutierrez had abused her too. The defense did not object to Ferrell's testimony on this subject.

After Dr. Harris testified, two more witnesses testified about Gutierrez's childhood abuse of his sister. The children's therapist, Smith, testified that A.V. and her mother discussed this topic in therapy. According to Smith, A.V. was angry that her mother had allowed Gutierrez to live with them, given that he had abused her mother in the past. The defense did not object to Smith's testimony.

A.V.'s mother later testified that when she was six or seven years old, Gutierrez, who was about a year older than her, had abused her sexually.

14

Specifically, she testified that he repeatedly touched her anus and vagina with his penis. She said that she had not realized that he would continue behaving this way as an adult. Though defense counsel objected that her testimony was irrelevant, counsel did not object on the basis of Rule 403.

Assuming without deciding that the admission of Dr. Harris's testimony was erroneous under Rule 403, we conclude that the error was harmless.

## III.    Ineffective Assistance of Counsel

Gutierrez contends that his attorneys provided ineffective assistance of counsel. He argues that their performance was "shoddy" in general and makes several specific complaints about their representation:

Gutierrez complains his initial attorney was ineffective in allowing Dr. Harris to conduct a mental-health evaluation. He asserts that his attorney did so without properly preparing Gutierrez for the evaluation or protecting his interests during the evaluation. He contends that these failures resulted in him incriminating himself.

Gutierrez complains that his trial attorney "failed to object to false allegations by the children by not asking for an instruction to disregard or for a mistrial."

Gutierrez complains that his trial attorney failed to object to extraneous-act testimony. Specifically, he contends that his attorney should have objected to his sister's testimony that Gutierrez had sexually abused her when they were children as well as Dr. Harris's testimony about this sexual abuse.

15

Gutierrez complains that his trial attorney may have waived error as to the two omitted pages of Smith's therapy records by failing to make the proper objections under Rules 106 and 107 of the Rules of Evidence. He further contends that his attorney should have tried to introduce the pages during cross-examination of Smith.

Gutierrez complains that his trial attorney failed to introduce evidence during the punishment phase as to the sexual abuse that he suffered as a child. In particular, Gutierrez contends that his attorney should have called his mother as a witness and should have recalled Dr. Harris to testify about the impact of sexual assault.

Gutierrez complains that his attorney was "wrong not to call any witnesses."

## A.    Waiver

Like any other claim, an ineffective-assistance claim must be properly briefed to present the issue for appellate review. *See* TEX. R. APP. P. 38.1. Thus, a party who states an ineffective-assistance claim in generalities, without making specific arguments, waives it. *See Rayme v. State*, 178 S.W.3d 21, 27 n.1 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *Peake v. State*, 133 S.W.3d 332, 334 (Tex. App.—Amarillo 2004, pet. ref'd). Likewise, a party who fails to support an ineffective-assistance claim with supporting citations to authority waives it. *See Nanez v. State*, 346 S.W.3d 875, 876 (Tex. App.—Amarillo 2011, no pet.); *Tufele v. State*, 130 S.W.3d 267, 270–71 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

**B. Analysis**

Gutierrez devotes three pages of argument to his several ineffective-assistance complaints. His argument includes a single record citation and refers to two rules of evidence. Apart from those two rules and a separate section setting forth the standard of review in general, Gutierrez does not support his argument with citations to authority. With respect to many of his complaints, he fails to explain why they constitute deficient performance or else how he was harmed. For example, he complains that his attorney:

- failed to object to false sex-abuse allegations made by the children but he does not identify any particular allegations or articulate a proper evidentiary basis for objection;

- called no witnesses for the defense, but he identifies only two candidates—Gutierrez's mother and Dr. Harris—and does not specify what their testimony would have been beyond generalities or demonstrate that they would have been available to testify for the defense; and

- did not adequately develop Gutierrez's history as a victim of sexual abuse but he does not identify what evidence should have been elicited beyond Dr. Harris's existing testimony on this topic.

Not all of Gutierrez's complaints are factually vague. He plausibly contends that his attorney should have objected to his sister's testimony that he sexually abused her. But Gutierrez offers no supporting legal argument or analysis. He does not explain why this extraneous-act testimony would not be admissible under section 2(b) of article 38.37 of the Code of Criminal Procedure or argue that it should have been excluded under Rule 403 even if admissible under section 2(b). Indeed, he does

17

not even mention these provisions. Gutierrez simply leaves it as an exercise for the court to formulate a legal basis for his position.

Similarly, Gutierrez contends that his attorney did not "properly object to Dr. Harris' testimony as it included extraneous offenses at the guilt stage." His attorney objected on the basis of Rules 403 and 404 of the Rules of Evidence. Gutierrez does not specify another basis for objection or cite another rule.

Gutierrez thus has waived most of his ineffective-assistance complaints.

## C. Smith's therapy records

We have held that the trial court did not err in excluding the two pages omitted from Smith's therapy records over the defense's objections under Rules 106 and 107 of the Rules of Evidence. Gutierrez's attorney therefore did not provide ineffective assistance with respect to the omission of these two pages. *See Toledo v. State*, 519 S.W.3d 273, 287 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (ineffective-assistance claim premised on failure to object requires demonstration that trial court would have committed harmful error in overruling objection).

## D. Harris's mental-health evaluation

As to Gutierrez's complaint about his attorney's decision to have his mental health evaluated, the record does not support his position. Gutierrez argues that his attorney did not properly prepare him for the evaluation and did not attend it and thereby failed to adequately protect his interests. These are factual assertions that the

18

record neither confirms nor contradicts. This lack of record support is fatal to Gutierrez's ineffective-assistance claim because the record must affirmatively show that his claim has merit. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Moreover, counsel ordinarily should have the opportunity to explain his performance before being found ineffective, and an appellate court should not find counsel's performance deficient unless his conduct was so outrageous that no competent attorney would have engaged in it. *Id.* The record contains no evidence as to defense counsel's decision-making, apart from a letter that suggests he had Dr. Harris evaluate Gutierrez's mental health in support of an effort to negotiate a plea bargain. On this spare record, we cannot say that no competent attorney would have allowed Gutierrez to be evaluated. *See id.*

## CONCLUSION

We affirm the trial court's judgment.

Gordon Goodman
Justice

Panel consists of Justices Lloyd, Goodman, and Landau.

Do not publish. TEX. R. APP. P. 47.2(b).